Timothy PIGFORD, et al., Plaintiffs,

v.

Ann VENEMAN, Secretary, United States Department of Agriculture, Defendant.

Cecil Brewington, et al., Plaintiffs,

v.

Ann Veneman, Secretary, United States Department of Agriculture, Defendant.

Nos. CIV.A.97–1978 (PLF), CIV.A.98–1693 (PLF).

United States District Court, District of Columbia.

April 14, 2003.

MEMORANDUM OPINION
AND ORDER

PAUL L. FRIEDMAN, District Judge.

The Court has before it defendant's motion to strike plaintiffs' response to defendant's response to the motion to reopen all late claims due to mail delays, as well as plaintiffs' opposition to the motion to strike and defendant's reply. Upon consideration of the parties' arguments, Rule 11 and Rule 12(f) of the Federal Rules of Civil Procedure, and the challenged document itself, the Court will grant defendant's motion to strike.

In a recent filing pertaining to its motion to reopen all late claims due to mail delays, class counsel Chestnut, Sanders, Sanders, Pettaway, Campbell & Albright made the following statement: "Throughout this litigation, Michael Sitcov has persistently demonstrated the same racist attitude of U.S.D.A. workers who systematically destroyed the farms and lives of thousands of farmers, simply because they were black." Response to Defendant's Response to Motion to Reopen All Late Claims Due to Mail Delays at 1–2 ("Pl. Response Regarding Mail Delays"). In a subsequent filing, Chestnut, Sanders wrote: "We believe Mr. Sitcov's dishonesty or wreckless [sic] disregard for the truth is inspired by his contempt for 'lawyers of color' who dare to challenge his unequal concern for black and white farmers." Response to Motion to Strike at 3. Despite the enormity of these accusations, Chestnut, Sanders has provided no factual basis or evidence in support of its charges. Nor has the firm explained how such accusations could be relevant to plaintiff's pending motion to reopen late claims. Instead, Chestnut, Sanders simply accused defendant's lead counsel, Michael Sitcov—an experienced and dedicated Department of Justice attorney and public servant of many years who has devoted nearly six years of his professional life to this important case—of engaging in conduct of the most deplorable kind. The Court cannot abide this type of groundless accusation.

Almost from the beginning of this lawsuit, virtually every party and lawyer has endured sometimes harsh criticism—from other parties to the case, from segments of the public and the media, and occasionally from this Court. The Court is well aware that attorneys both for plaintiffs and for the government have experienced frustration in their efforts throughout this difficult and often contentious matter. Despite the disputes between counsel over a variety of issues in implementing the procedures agreed to in the settlement, however, it has been apparent to the Court from the very beginning that every attorney of record—no matter who the client—consistently has honored the fundamental rights of the African–American farmers on whose behalf the case was brought. Although Mr. Sitcov's role necessarily has been to protect and defend the

interests of his client, the United States Department of Agriculture, the Court has no doubt that Mr. Sitcov always has recognized and respected the basic rights of plaintiffs and their lawyers, without regard to their race. Indeed, the Court has expressed its respect and appreciation for Mr. Sitcov's hard work and dedication repeatedly in open court, as early as March 2, 1999, at the Court's fairness hearing on the Consent Decree, and as recently as the December 11, 2002 status conference. *See* Transcript of Fairness Hearing, March 2, 1999 at 192–95; Transcript of Status Conference, December 11, 2002 at 41–43. Yet Chestnut, Sanders unfairly likens Mr. Sitcov to those within the Department of Agriculture and on the state level who unlawfully discriminated against African–American farmers for many years before this case was settled. *See* Pl. Response Regarding Mail Delays at 1–2.

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that by presenting to the court any "pleading, written motion, or other paper," an attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading "is not being filed for an improper purpose, such as to harass . . . and [that] the allegations and other factual contentions have evidentiary support . . . ." Fed.R.Civ.P. 11(b). Here, not only did Chestnut, Sanders fail to offer any evidence of Mr. Sitcov's alleged "racist attitude," but the Court can find nothing in the entire record of this case—spanning many years, many hearings and many pages—that would support such a charge. The Court has observed Mr. Sitcov and listened to his arguments and representations in court on scores of occasions, has met with him and opposing counsel in Chambers a number of times, and has read thousands of pages that he has either written or whose preparation he has supervised. While his frustration level may have risen over the years (and his choice of language in certain recent filings has reflected that frustration), Mr. Sitcov has appeared always to have acted professionally, honorably and ethically. There is no basis in fact and no evidentiary support for the charges that he has exhibited a racist attitude or that he has contempt for "lawyers of color." Such "[a]busive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir.1989).

In addition, Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." Fed.R.Civ.P. 12(f).[1] Although a motion to strike generally is disfavored because it seeks an extreme remedy, a court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f). *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *see* 2 Moore's Federal Practice § 12.37[1] at 12–93 to 12–94 (3d ed.2002). The word "scandalous" in Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2 Moore's Federal Practice § 12.37[3] at 12–97; *see also In re 2The-Mart.com Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D.Cal.2000) ("scandalous" includes allegations that cast "a cruelly derogatory light on a party or other person"). Chestnut, Sanders' charges of racism are plainly scandalous within the meaning of the Rule, in that they "improperly cast[ ] a derogatory light" on a dedicated government attorney who has done his best to navigate the deep and murky waters of this litigation. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (2d ed.1995). The accusations are indefensible and wholly inappropriate and have no place in filings in this court.

Because the accusations of racism in the Chestnut, Sanders filings are unsupported by facts or evidence, constitute a form of harass-

---

1. Although Rule 12(f) applies by its terms only to "pleadings," courts occasionally have applied the Rule to filings other than those enumerated in Rule 7(a) of the Federal Rules of Civil Procedure.

*See, e.g., Cobell v. Norton*, No. 96–1285, 2003 WL 721477 (D.D.C. March 3, 2003) (considering Rule 12(f) motion to strike plaintiffs' response to defendant's historical accounting plan).

ment, and are scandalous, the Court will grant defendant's motion to strike Chestnut, Sanders' Response Regarding Mail Delays and *sua sponte* will strike Chestnut, Sanders' Response to the Motion to Strike, based both on Rule 11 and on Rule 12(f) of the Federal Rules of Civil Procedure. *See* 2 MOORE'S FEDERAL PRACTICE § 12.37[1] at 12–94; *McCorstin v. United States Dep't of Labor*, 630 F.2d 242, 244 (5th Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1705, 68 L.Ed.2d 201 (1981).

Finally, counsel are reminded that Local Civil Rule 83.8(b)(6)(v) of the Rules of this Court requires all counsel to familiarize themselves with the D.C. Bar Voluntary Standards for Civility in Professional Conduct, which are included as Appendix D to those Rules. Among other things, the Standards provide that

> we [attorneys] will treat all participants in the legal process, including counsel ... in a civil, professional, and courteous manner, at all times and in all communications, whether oral or written.... Except within the bounds of fair argument in pleadings or in formal proceedings, we will abstain from disparaging personal remarks or acrimony toward such participants .... We will not bring the profession into disrepute by making unfounded accusations of impropriety or making ad hominem attacks on counsel, and, absent good cause, we will not attribute bad motives or improper conduct to other counsel.... We will not degrade the intelligence, ethics, morals, integrity or personal behavior of others, unless such matters are legitimately at issue in the proceeding.

D.C. Bar Voluntary Standards for Civility in Professional Conduct ¶¶ 1, 3, 5, 28. Despite these established principles, the communications among counsel and some of their court filings in this case have grown less civil, less respectful, and less professional, and the language used by Chestnut, Sanders in its most recent filings is beyond the pale. Whatever the underlying issues in this lawsuit—and despite the undeniably tragic history of discrimination against African–American farmers in this country—counsel have an obligation to their clients, to this Court and to the legal profession not to engage in the type of conduct that is the subject of this Opinion and that has begun to pervade this case in recent months. When the lawyers involved in this litigation resort to scurrilous accusations and inflammatory remarks about opposing counsel, no one wins—least of all the African–American farmers in whose name this case was brought.

For all of these reasons, it is hereby

ORDERED that defendant's motion to strike plaintiffs' response to defendant's response to plaintiffs' motion to reopen all late claims due to mail delays [763] is GRANTED; it is

FURTHER ORDERED that plaintiffs' response to defendant's response to plaintiffs' motion to reopen all late claims due to mail delays [776] is STRICKEN from the record in this case; it is

FURTHER ORDERED *sua sponte* that plaintiffs' Response to the Motion to Strike [772] is STRICKEN from the record in this case; and it is

FURTHER ORDERED that the Clerk of the Court is directed to strike these two documents from the records of this Court.

SO ORDERED.