**Michael SITCOV, Petitioner,**

**A Member of the Bar of the District of Columbia Court of Appeals**

v.

**DISTRICT OF COLUMBIA BAR, Respondent.**

No. 05–BG–258.

District of Columbia Court of Appeals.

Argued April 12, 2005.

Decided Oct. 20, 2005.

---

Elizabeth Sarah Gere, with whom Erik M. Pritchard, Washington, DC, was on the brief, for petitioner.

Timothy K. Webster, with whom Colleen M. Lauerman, John J. Hathway, and Gustav P. Chiarello, III, Washington, DC, were on the brief, for respondent.

Sara–Ann Determan, Jamie S. Gorelick, Robert E. Jordan, III, E. Barrett Prettyman, Jr., Daniel A. Rezneck, Jacob A. Stein, Robert L. Weinberg, and Charles R. Work, Washington, DC, amici curiae filed a brief in support of petitioner.

Before SCHWELB and RUIZ, Associate Judges, and KING, Senior Judge.

SCHWELB, Associate Judge:

By means of a "Petition for Original Jurisdiction" filed in this court, Michael Sitcov, a member of the District of Columbia Bar, challenges his administrative suspension by the Bar for nonpayment of dues and the Bar's refusal to reinstate him retroactively to the date of his suspension. Sitcov claims, *inter alia*, that the Bar

failed to comply with certain provisions of the District of Columbia Bar Rules by suspending him without proper notice and by reinstating him prospectively but declining to reinstate him *nunc pro tunc* upon his payment of delinquent dues and associated penalties.[1] In addition, Sitcov asserts that Article III § 2(a) of the District of Columbia Bar by-laws, on which the Bar relied to support its denial of retroactive reinstatement, contravenes this court's Bar Rules and case law, and he requests declaratory relief to that effect. We disagree with Sitcov's contentions and sustain the Bar's actions.

## I.

## FACTUAL BACKGROUND [2]

Sitcov, who is presently employed as an attorney in a supervisory position with the United States Department of Justice ("DOJ"), was admitted to the District of Columbia Bar in 1980. He remained a member in good standing until 2002, when he failed to pay the annual membership dues, which are due and payable on July 1 of each year and must be paid within ninety days of that date. Pursuant to the Bar's by-laws, Sitcov's membership was suspended on September 30, 2002, as a result of his failure to make timely payment of his dues for the year 2002.[3] In July 2003, and again in July 2004, Sitcov failed to pay dues for those two years.

Sitcov alleges that he was not advised of his suspension by anyone until November 2, 2004, more than two years after it occurred. On that date, he was contacted regarding the matter by the DOJ's Office of Professional Responsibility. Upon learning that his membership had been suspended, Sitcov asked his wife, Rose DiNapoli, who generally paid the couple's bills, to determine whether, as alleged by the Bar, the required dues payments had not been made. After examining her records, Ms. DiNapoli confirmed that her husband's Bar dues for the past three years had not been paid. According to Sitcov, however, his wife was unable to locate a notice or invoice from the Bar regarding payment for any of the years for which Sitcov was delinquent. On November 8, 2004, Sitcov tendered payment of all unpaid dues for the previous three years, together with penalties that had been assessed against him pursuant to the by-laws. Sitcov was immediately reinstated as an active member of the Bar, effective on the date of payment.

1. In his earlier action brought in the United States District Court for the District of Columbia, Sitcov also alleged that his constitutional rights had been violated. He has not, however, requested this court to resolve these claims.

2. There is no evidentiary record before the court. Most of the facts recited in this opinion are taken from the parties' various pleadings, and, except as noted *infra* at pp. 302–03, they are largely undisputed.

3. Art. III § 2(a) of the Bar's by-laws provides: If the annual dues of any member remain unpaid as of July 1 of the year in which the dues are due and payable, the Treasurer or his/her delegate shall send on July 15 to the member a notification that his/her dues have not been paid. If the dues of the member have not been received with a postmarked date of August 15, the Treasurer or his/her delegate shall immediately send a notification to the member, by first-class mail, that a late charge of $30.00 has been added to the unpaid dues and, unless any unpaid late charges and any unpaid dues are received postmarked by September 30, the membership of such member shall be, and hereby is, automatically suspended pursuant to this Section. In the event of suspension, the Secretary or his/her delegate shall notify the clerks of the Court of Appeals and the Superior Court of the suspension.

On February 15, 2005, after encountering significant professional difficulties at the Department of Justice as a result of his suspension,[4] Sitcov requested that his reinstatement be made *nunc pro tunc, i.e.,* retroactive to the date of suspension. By letter dated February 25, 2005, the Bar's Membership Committee denied Sitcov's request. The Committee explained that, under the Bar's by-laws, a member may be reinstated retroactively only if "proper procedures were not used or [if] there was an actionable error or omission on the part of the staff." Although the Committee acknowledged that the Bar had transmitted notices of delinquency to Sitcov at an incorrect e-mail address, it concluded that this error on the Bar's part did not warrant retroactive reinstatement. The Committee explained that "the use of e-mail by the Bar in the performance of its billing and collection functions is not required by the Bar's Rules or by-laws, but rather its use was added as a courtesy to our members."

Sitcov challenged the Membership Committee's refusal to reinstate him *nunc pro tunc* by appealing the decision to the Bar's Board of Governors (the "BOG"). On March 8, 2005, the BOG held a hearing in executive session, and Sitcov was provided with the opportunity, through counsel, to present his position. On March 14, 2005, by a vote of 10–7, the BOG denied Sitcov's request for retroactive reinstatement.

On March 15, 2005, Sitcov filed a civil complaint against the Bar in the United States District Court for the District of Columbia, alleging constitutional violations as well as noncompliance with this court's Bar Rules. Sitcov requested the District Court to award both injunctive relief and damages. Sitcov also moved the court to issue a temporary restraining order, asserting that the BOG's denial of his request for reinstatement *nunc pro tunc* had caused him irreparable injury. Hearings on the request for a temporary restraining order were held on March 16 and 18, 2005. The judge, Honorable Emmet G. Sullivan, expressed concern that the proper disposition of some of Sitcov's claims turned on questions of District of Columbia law and on the Rules of this court. The judge therefore concluded that Sitcov's case should be addressed, in the first instance, by the District of Columbia Court of Appeals. On March 16, 2005, the BOG consented to the entry of an interim order reinstating Sitcov, *nunc pro tunc* to the

---

**4.** These difficulties are described as follows in a brief on behalf of seven former presidents of the Bar, as *amici curiae:*

> The consequences of not reinstating Mr. Sitcov are unduly harsh. The petitioner, who is employed by the Department of Justice (DOJ), is being subjected to an investigation by the Office of Professional Responsibility of the DOJ which may result in discipline up to and including his removal from federal service. Further, the DOJ has told Mr. Sitcov that if Mr. Sitcov is not reinstated he will be required to notify courts across the country of his suspension. This is not a case where misconduct or the professional competence of the attorney or his ability to serve his client are at issue— unlike other cases resulting in suspension. He has had a distinguished career at the

Department of Justice. Indeed Mr. Sitcov's hard work and dedication as well as the fact that he "has appeared always to have acted professionally, honorably and ethically" have been recognized by United States District Judge Paul L. Friedman. *Pigford v. Veneman,* 225 F.R.D. 54, 58 (D.D.C.2005) and *Pigford v. Veneman,* 215 F.R.D. 2, 4, (D.D.C.2003).

We have no occasion to comment on the internal procedures of the DOJ vis-a-vis Justice Department attorneys who have been administratively suspended by our Bar. Those procedures are governed by DOJ regulations and policies, and they are not within the scope of this opinion. Our analysis is, however, intended to clarify the non-disciplinary nature of an administrative suspension by our Bar.

date of his suspension; the interim order was to expire on April 14, 2005. On March 18, 2005, Judge Sullivan issued a second order which provided that the District Court would "abstain and temporarily stay proceedings in this case in order to afford the District of Columbia Court of Appeals an opportunity to address [Sitcov's] claims in the first instance."

On March 22, 2005, in light of Judge Sullivan's ruling, Sitcov filed a "Petition for Original Jurisdiction"[5] in this court. He alleged, *inter alia,* that his suspension, the Bar's refusal to reinstate him *nunc pro tunc,* and the provision of the by-laws on which the BOG had relied, were contrary to this court's Rules governing bar membership. On April 12, 2005, following oral argument, we issued an order temporarily reinstating Sitcov *nunc pro tunc* pending further order of this court. We also requested supplemental briefing regarding whether this court has original jurisdiction to entertain Sitcov's claims. Supplemental submissions were duly filed, and the matters before us are now ready for decision.

## II.

## JURISDICTION

The jurisdictional issue in this case arises in an unusual posture. The plaintiff, who initially brought his suit in the United States District Court, and who filed the proceedings in this court only in the wake of the District Court's action, now asserts, in effect, that this court lacks original jurisdiction to entertain the case.[6] The Bar, on the other hand, contends that we do have jurisdiction, and asks us to decide not only the questions arising under our Rules, but Sitcov's constitutional claims as well. Whether this court, as an appellate tribunal, has original jurisdiction to hear the case in the absence of a statute authorizing us to do so is not a simple question; litigants are seldom permitted to bring their grievances initially to the highest court in the jurisdiction. Nevertheless, we conclude that the matter is properly before us.

As Sitcov correctly points out in his post-argument brief, we cannot rely in this case on the more conventional bases of jurisdiction:

> Mr. Sitcov is not seeking review of any action by the Superior Court for the District of Columbia. *Cf.* Rules 3 and 5 of the District of Columbia Court of Appeals Rules .... Nor is Mr. Sitcov seeking review of an action by a District of Columbia "agency." *Cf.* Rule 15. Similarly, Mr. Sitcov is not seeking a writ of mandamus or prohibition directed to a Superior Court Judge or a District of Columbia officer. *Cf.* Rule 21(a)(1). And although this Court has jurisdiction to consider certified questions of law from the United States Supreme Court, a Court of Appeals of the United States or the highest appellate court of any state, *see* Rule 22, it is well-settled that the District Court cannot (and did not purport to) certify a question of law to this Court. *See* D.C.Code § 11–723; *Georgetown University v. Sportec International, Inc.,* 572 A.2d 119 (D.C.1990); *3307 M St. Partners v. Commonwealth Land Title Ins. Co.,* 782 F.Supp. 4 (D.D.C.1992). Finally, Mr. Sitcov is not complaining about the deni-

---

5. In his Petition, counsel for Sitcov requested this court to "exercise its original jurisdiction," but did so "[p]ursuant to D.C.Code § 11–2501 and the express instruction of the United States District Court for the District of Columbia. (Sullivan, J.)."

6. But see note 5, *supra,* noting Sitcov's claim in his "Petition for Original Jurisdiction" that this court *does* have jurisdiction.

al of an application for admission to the Bar, *cf.* Rule 46(g), and this is not an action brought by the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law against Mr. Sitcov, *cf.* Rule 49(e).

▇▇▇ We agree with the Bar, however, that the foregoing litany does not end the inquiry. The District of Columbia Bar was established by this court as an "arm of the court." *See* D.C.Code § 11–2501 (2001). Section 11–2501 provides that "[t]he District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." [7] In 1971, exercising this statutory authority, as well as the "inherent power of the Court over members of the legal profession," this court promulgated the Rules for the District of Columbia Bar. On April 1, 1972, we officially "assume[d] jurisdiction over the practice of law" in the District of Columbia.[8] Although there is no statute or rule expressly providing for direct review by this court of a decision of the BOG, we conclude that this court necessarily has the authority to review a decision by an entity which this court created, when that decision pertains to an issue with respect to which the court is vested with the final authority. In essence, although the Bar is an "arm of the court," the court itself is responsible for the regulation of the legal profession in the District of Columbia, and must therefore have the authority to oversee the management of the profession by that "arm." Moreover, if we were to hold that this court lacks original jurisdiction over Sitcov's non-federal claims, then he would have no judicial remedy at all under District of Columbia law, regardless of the merits of his position. *[Alvin S.] Kennedy v. Educ. Testing Serv. Inc.,* 393 A.2d 523, 525 (D.C.1978); *District of Columbia Hous. Auth. v. District of Columbia Office of Human Rights,* 881 A.2d 600, 608 (D.C. 2005) ("A strong presumption exists in favor of judicial reviewability which may be rebutted only by clear and convincing evidence of a contrary legislative intent.") (quoting *Martin v. District of Columbia Courts,* 753 A.2d 987, 991 (D.C.2000)).

Our jurisdiction to review the actions of the Bar in this case is somewhat analogous to our authority to consider challenges to decisions of the Committee on Admissions (COA), an entity which, like the Bar, was created by this court, and which is an arm or instrumentality thereof. In *[Alvin S.] Kennedy,* an applicant for membership who had failed the bar examination on several occasions brought suit in the Superior Court, claiming that the Educational Testing Service (ETS), which administered the exam for the COA, "discriminated against candidates with 'strong civil rights attitudes.'" 393 A.2d at 524. The applicant demanded that he be permitted to inspect, and then to challenge, the "objective" portion of his examinations. *Id.* The trial court held, *inter alia,* that it lacked

---

7. Prior to the enactment of this statute in 1970, the United States District Court for the District of Columbia exercised responsibility for the practice of law in all of the District's courts, local as well as federal.

8. Specifically, the preamble to our Bar Rules provides:

   The District of Columbia Court of Appeals in the exercise of its inherent powers over members of the legal profession does hereby create, as an official arm of the court, an association of members of the Bar of the District of Columbia to be known as the District of Columbia Bar, and pursuant to its statutory authority governing the admissions to the Bar promulgates the following rules for the government of the Bar and the individual members thereof.

jurisdiction,[9] and this court affirmed. In sustaining the trial judge's ruling, we stated:

> Any order of the Superior Court which might have directed ETS to disclose those materials, and any award premised upon a failure to disclose, would necessarily call into question the validity of this court's and its Committee on Admissions' policies against such disclosure. The only purpose of the requested disclosure, as stated in appellant's complaint, relates to the failure of the Committee on Admissions to certify appellant to this court for admission to the Bar, a function within the exclusive control of this court. D.C.Code 1973, § 11–2501. *This court has authority to entertain a petition for review of admission examinations even though such review is not afforded by rule. See Harper v. District of Columbia Committee on Admissions,* 375 A.2d 25 (D.C.1977) (on petition for original jurisdiction, permitting review of essay portion of examination). Under these circumstances, *our original jurisdiction must be exclusive of, not concurrent with, that of the Superior Court,* for the Superior Court is without authority to hold or declare invalid a rule or policy of this court within the ambit of its plenary authority under § 11–2501.

*Id.* at 525 (emphasis added; additional citations omitted).

In *Powell v. Nigro,* 543 F.Supp. 1044 (D.D.C.1982), the plaintiff brought suit in the United States District Court against present and past members of the COA, seeking to challenge in a federal forum a determination by the COA that she had failed the bar examination. The District Court recognized that "[t]he [District of Columbia] Court of Appeals alone may make the final decision, whether express or implied, concerning whether to admit a particular applicant to the District of Columbia bar." *Id.* at 1046. The court went on to explain that "[a]lthough the District of Columbia has no statutorily established procedure for petitioning the Court of Appeals for review of a final determination of the Committee on Admissions denying certification that an applicant has passed the bar examination, the Court of Appeals nevertheless does accept and consider petitions for review." *Id.* at 1046 (citing [*Alvin S.*] *Kennedy,* 393 A.2d at 525, and *Harper,* 375 A.2d at 27).

■ The posture of Sitcov, who alleges that he was wrongfully suspended from membership and that he was improperly denied reinstatement *nunc pro tunc,* is analogous for present purposes to that of the plaintiffs in [*Alvin S.*] *Kennedy* and *Powell,* each of whom asserted that he or she had been wrongfully excluded from membership by the COA. Although there is no procedure established by statute for review by this court of decisions of the BOG which affect membership, the question before us here, namely, whether Sitcov was entitled to *remain* a member of our Bar, or be *reinstated* as a member, parallels the issue in [*Alvin S.*] *Kennedy* and *Powell, i.e.,* whether the applicant may *become* a member. The absence of a statutorily based review procedure is no more dispositive here than it was in the COA cases.[10]

---

9. The trial judge also held that the complaint failed to state a claim upon which relief may be granted.

10. The Bar also attempts to draw an analogy, for jurisdictional purposes, between this case and the court's role in disciplinary proceedings instituted pursuant to D.C. Bar Rule XI. According to the Bar, this court "routinely hears appeals from decisions of the Board on Professional Responsibility about ethical violations by Bar members." This is incorrect. The BPR does not make *decisions* regarding

■ Moreover, "[t]he great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction." *Brookens v. Comm. on Unauthorized Practice of Law*, 538 A.2d 1120, 1125 (D.C.1988). Numerous decisions from other jurisdictions recognize that "inherent authority." [11] We conclude that the claims raised by Sitcov fall within that authority. Sitcov asks the court to set aside the BOG's suspension of his membership for nonpayment of dues. He also challenges the BOG's enactment of the by-laws, and its decision, based on the by-laws, to deny his request for reinstatement *nunc pro tunc*. His contentions implicate the regulation and control of the practice of law. This court has final authority over the Bar and over any decision made by any of its instrumentalities, including the BOG as well as the COA, with respect to admission to or continued membership in the Bar. Accordingly, we have original jurisdiction to review the actions of the BOG challenged by Sitcov in this case.

## III.

## SUBSTANTIVE ISSUES

### A. *D.C. Bar Rule XI*

■ Sitcov argues that his suspension was unlawful because, in suspending him, the Bar did not comply with the procedures set forth in D.C. Bar Rule XI, which governs "disciplinary proceedings." Sitcov contends that because he was suspended from practice, and therefore "disciplined," he was entitled, *inter alia*, to "an opportunity to respond to the allegations upon which the suspension" was premised.[12] The Bar responds that there is a dispositive difference between a disciplinary suspension, which is subject to the procedures prescribed in Rule XI, and an "administrative" suspension pursuant to D.C. Bar Rule II,[13] which is not. According to the Bar, a suspension imposed under Rule II

ethical violations; on the contrary, it makes *recommendations* to the court with respect to proposed discipline. Only the court has the authority to discipline attorneys. *See In re Shillaire*, 549 A.2d 336, 342 (D.C.1988) ("In the final analysis, the responsibility to discipline lawyers is the court's. The buck stops here.") We therefore disagree with the contention that this court's practice of reviewing recommendations of the BPR provides support for our exercise of jurisdiction here.

11. *See, e.g., In re Sonnenreich*, 86 P.3d 712, 718–19 (Utah 2004); *Mississippi Bar v. Attorney HH*, 671 So.2d 1293, 1295 (Miss.1995); *Kentucky Bar Ass'n v. Shewmaker*, 842 S.W.2d 520, 521 (Ky.1993); *Burns v. Huffstetler*, 433 So.2d 964, 965 (Fla.1983); *Brown v. Oregon State Bar*, 293 Or. 446, 648 P.2d 1289, 1293 (1982); *Pennsylvania Pub. Util. Comm'n Bar Ass'n v. Thornburgh*, 62 Pa.Cmwlth. 88, 434 A.2d 1327, 1331 n. 6 (1981); *Attorney Gen. of Maryland v. Waldron*, 289 Md. 683, 426 A.2d 929, 934–35 (1981); *Bennion, Van Camp, Hagen & Ruhl v. Kassler Escrow, Inc.*, 96 Wash.2d 443, 635 P.2d 730, 735–36 (1981) (en banc).

12. Rule XI § 6(a)(2) provides that "no disposition shall be recommended or undertaken by Bar Counsel until the accused attorney shall have been afforded an opportunity to respond to the allegations." In addition, § 19(e) requires "[s]ervice upon the attorney of a petition instituting formal disciplinary proceedings," which "shall be made by personal service ... or by registered or certified mail, return receipt requested ....." The Bar maintains that Rule XI is not applicable to Sitcov's suspension, and that invocation of these procedures was therefore unnecessary.

13. Rule II § 6 provides that "[i]f the annual dues of any member remain unpaid at the expiration of 90 days from the time when such dues are due and payable, the membership of such member may be suspended by the Board of Governors in the manner provided in the [b]y-laws."

is administrative and non-disciplinary, and Rule XI therefore does not apply.

■ The term "administrative suspension" does not appear either in this court's Bar Rules or in the Bar's by-laws. In the absence of any provision for an "administrative suspension," Sitcov was simply "suspended," and his suspension was not characterized either as disciplinary or as administrative. However, in determining whether the provisions of Rule XI apply, we look to the substance of the Bar's action, not to its label. *Cf. In re Laibstain,* 841 A.2d 1259, 1263 (D.C.2004).

■ Upon consideration of the substance of the issue before us, we agree with the Bar that a suspension for nonpayment of dues is not "discipline" as contemplated by Rule XI. Rule XI premises discipline on a finding of misconduct. Section 2(b) of Rule XI defines "misconduct" as "[a]cts or omissions by an attorney, individually or in concert with any other person or persons, which violate the attorney's oath of office or the rules or code of professional conduct currently in effect in the District of Columbia . . . ." Although payment of dues is a requirement of Bar membership, it is not the subject of an attorney's "oath of office," nor is it required by the Code of Professional Conduct. More significantly, a suspension pursuant to Rule II does not have consequences for an attorney comparable to those imposed in a disciplinary proceeding instituted pursuant to Rule XI. Principally, an attorney administratively suspended for non-payment of dues can secure immediate reinstatement by paying what he or she owes and associated penalties; if the attorney does so, he or she is automatically reinstated. An attorney who has been suspended in a disciplinary proceeding, on the other hand, must serve out his or her suspension and, even after doing so, has a disciplinary "record" that can come back to haunt him or her in the event of another violation in the future. Moreover, an attorney who has been suspended for misconduct pursuant to Rule XI is required by Sections 14(a)-(c) of that rule to provide notice of his or her suspension to all clients, both in litigated and in non-litigated matters, as well as to adverse parties. There is no comparable requirement for an attorney suspended pursuant to Rule II; the Bar expressly acknowledges that Sitcov is not, and never was, obliged by any provision of our Rules to notify former clients, adverse parties, or courts, that his membership had been suspended.[14] Finally, attorneys suspended for misconduct may be required to furnish proof of rehabilitation as a condition of reinstatement. *See* D.C. Bar R. XI § 3(a)(2); *In re Chisholm,* 679 A.2d 495, 503 (D.C.1996). An attorney who has been suspended for failure to pay dues, however, is automatically reinstated upon payment of all unpaid dues and penalty fees. Once an administratively suspended attorney has been reinstated, that attorney's public record reflects that his or her membership is "active," and, in the absence of any record of discipline pursuant to Rule XI, his or her "disciplinary history" is reported as "none."

14. Sitcov has expressed understandable concern that his employer, the Department of Justice, intends to provide information regarding his suspension to "dozens of courts throughout the country in which a document that identified [Sitcov] as an attorney for the United States was filed from October 1, 2002 through November 7, 2004." We anticipate, however, that our clarification in this opinion of the differences between disciplinary and administrative suspensions will obviate the treatment of attorneys who were previously under administrative suspensions as if they had been subjected to professional discipline, which they have not. See also note 4, *supra.*

Accordingly, we conclude that the distinction which the Bar makes between "administrative" and "disciplinary" suspensions is a reasonable one. The difference between the two kinds of suspensions has been recognized in other jurisdictions as well. The Supreme Court of Utah first adopted this distinction over sixty years ago, *see In re Oliver*, 97 Utah 1, 89 P.2d 229, 233 (1939), and that court has recently reaffirmed it. *See In re Sonnenreich*, 86 P.3d at 717–18. As the court explained in *Sonnenreich*,

> a suspension for failure to pay dues terminates solely the right to exercise the privileges of the status of a member. The termination of that right for such reasons casts no reflection upon the member's moral qualifications .... Therefore, ... a difference exists between disciplinary actions for lack of the qualifications necessary to practice law, and administrative suspensions for non-payment of dues.

*Id.* The court added that "[m]any states make this distinction between administrative and disciplinary suspensions." *Id.* n. 5 (citations omitted). Moreover, an attorney's suspension for failure to pay dues "has no bearing on [his or her] qualifica-tion[s], competence, or moral character." *People v. Kieser*, 79 N.Y.2d 936, 582 N.Y.S.2d 988, 591 N.E.2d 1174 (1992).[15] We agree with the court in *Sonnenreich*, and we take this opportunity to adopt ex-plicitly the distinction between adminis-trative and disciplinary suspensions.[16] Because Sitcov was suspended administra-tively, the Bar was not required to pro-ceed pursuant to Rule XI, which applies only to disciplinary proceedings.

### B. *Article III § 2(a) of the By-laws*

■ Sitcov also challenges the validity of Article III § 2(a) of the Bar's by-laws. See note 3, *supra*. He contends that this provision is inconsistent with D.C. Bar Rule II, and that it is therefore "void *ab initio*." We disagree.

Rule II § 6 of our Bar Rules provides that "[i]f the annual dues of any member remain unpaid at the expiration of 90 days from the time when such dues are due and payable, the membership of such member may be suspended by the Board of Gover-nors in the manner provided by the [b]y-laws." The BOG, in turn, promulgated Article III § 2(a), which provides for the automatic suspension of any member whose dues remain unpaid ninety days af-ter July 1. Sitcov contends that "[t]he in-consistency between the [ ] two provisions is apparent; under Rule II, suspension for nonpayment of dues is precatory, whereas the by-law makes it mandatory."

We do not read Rule II § 6 as limiting the BOG's authority to impose an automat-ic suspension for nonpayment of dues. Rather, in instructing that a suspension shall be imposed "in the manner provided by the [b]y-laws," this court delegated to the BOG the authority to determine the appropriate procedure for suspending members who neglect to pay their dues in timely fashion. The by-laws promulgated by the BOG constitute an appropriate ex-ercise of that authority. First, the chal-lenged by-law provides that a delinquent

---

**15.** Several courts have determined, reason-ably, in our view, that the administrative sus-pension of an attorney does not constitute a basis for an ineffective assistance of counsel claim, since the suspension was not based on the attorney's ability or fitness to practice law. *See, e.g., Kieser*, 591 N.E.2d at 1175.

**16.** This court has also recognized this distinc-tion, at least implicitly. *See In re Bledsoe*, No. 93–BG–970 (D.C. March 24, 1994) (dismiss-ing reciprocal disciplinary proceeding be-cause an administrative suspension imposed by the court of another jurisdiction, based on the member's failure to participate in Con-tinuing Legal Education, did not warrant re-ciprocal discipline here).

member shall be given notice by mail on two separate occasions before an "automatic" suspension is imposed. Second, it establishes a mechanism for automatic reinstatement once all unpaid dues and fees have been paid. These procedures constitute an orderly and efficient scheme to enforce the payment of dues. The BOG's promulgation of Article III § 2(a) of the by-laws was a permissible exercise of discretion, and the by-law therefore is not inconsistent with Rule II, nor is it void *ab initio*. *Cf. Davis v. Henderson*, 652 A.2d 634, 636 (D.C.1995) (upholding the Parole Board's promulgation of guidelines for granting parole, where the guidelines "merely formalize[d] the manner in which the Board exercises the discretion conferred upon it by [D.C.Code § 24–204 (2001)].").

Sitcov also argues that this court's decision in *In re [Thomas] Kennedy*, 542 A.2d 1225 (D.C.1988), forecloses the Bar from suspending him for nonpayment of dues. Specifically, Sitcov points to the court's statement that

> [t]aken alone, this violation would ordinarily justify the milder sanction, if any, of an informal admonition, a censure, or a reprimand. In our view, the purposes of imposing discipline on attorneys do not require that the Bar employ the draconian sanction of suspension to collect its dues from duly admitted and presumably competent and honest attorneys.

*Id.* at 1229–30 (footnote omitted).

Although, when removed from its context, the quoted language might plausibly

be viewed as supportive of Sitcov's position, the *[Thomas] Kennedy* decision is distinguishable in dispositive respects from the situation now before us. *[Thomas] Kennedy* involved a disciplinary proceeding initiated by Bar Counsel against an attorney who had been charged, *inter alia*, with violating DR 3–101(B),[17] for practicing law after his membership had been suspended for failure to pay dues. The "violation" to which the court was referring to in the passage quoted above was not the attorney's failure to pay dues, but rather his continued practice of law after his membership had been suspended. The court held that the respondent's violations, including but not limited to his continued practice following his suspension from practice, did not justify a disciplinary suspension of a year and a day.[18] Instead, the court imposed a disciplinary suspension of ninety days. *Id.* at 1231.

*[Thomas] Kennedy* did not involve the propriety of an administrative suspension at all, and the decision does not cast doubt on the validity of the procedures established by the Bar in Art. III § 2(a) of the by-laws. The court noted that "[i]n choosing a sanction [for violating DR 3–101(B)] ... we must consider the reason for imposing this suspension." *Id.* at 1229. The court went on to state that "nonpayment of Bar dues says little about [an attorney's] fitness to practice law in the District of Columbia," *id.*, and took this into consideration in imposing a sanction.[19] In this case, however, Sitcov has not been disci-

---

**17.** DR 3–101(B) provides that a lawyer shall not "practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

**18.** The attorney in *[Thomas] Kennedy* was also found to have violated three other provisions of the Rules of Professional Conduct. *See id.*, 542 A.2d at 1231 n. 11.

**19.** This court further stated:

> We agree, in general, with Kennedy's contention that his violation of DR 3–101(B), taken alone, is not very serious as compared to other disciplinary violations and would not justify a harsh sanction .... [R]easonable claims to a lack of knowledge

plined or sanctioned at all. The decision in [*Thomas*] *Kennedy* therefore has no bearing on the validity of the Bar's actions vis-a-vis Sitcov.

## C. *Retroactive Reinstatement*

■ Rule II § 8 of our Bar Rules provides that "[i]n an appropriate case, the Board of Governors may reinstate an attorney to membership nunc pro tunc." In 1983, the BOG amended Art. III § 6 of its by-laws, which now states:

> If the Board of Governors deems it appropriate, it may reinstate an attorney to membership ... retroactively, as of the date of suspension .... An appropriate case ... shall be only one in which it is apparent that the suspension ... resulted from error or omission on the part of the Bar.

Pursuant to this by-law, the BOG grants retroactive reinstatement only if it is apparent that the member's suspension was a result of the Bar's own mistake. The BOG adopted the by-law in order to have a consistent, bright-line rule for granting reinstatement retroactively.[20] The BOG points out that it receives many requests for reinstatement *nunc pro tunc* each year,[21] and that consideration of the individual circumstances of each applicant would be burdensome.

Several former presidents of the District of Columbia Bar, as *amici curiae*, have filed a short brief in support of the position taken by Sitcov. *Amici* argue that all members should be reinstated retroactively once delinquent dues have been paid in full, "absent some evidence of misconduct or abuse of the membership process during the suspension period." According to *amici*, "[t]he power to reinstate retroactively (*nunc pro tunc*) was given to the Bar so it could fully reinstate the member once he/she paid his/her dues."

We cannot agree with *amici* that the Bar is obliged to grant retroactive reinstatement in all cases once payment has been made. Rule II § 8 explicitly provides that the BOG *may* reinstate an attorney retroactively *in an appropriate case.* The rule does not contemplate that *every* attorney is to be reinstated *nunc pro tunc*; the verb "may" is permissive, and "appropriate case" is not "every case." Accordingly, we must determine whether the BOG exceeded its authority by adopting a bright-line rule, and by limiting "appropriate" cases to those in which it is apparent that the member's suspension has resulted from an "error or omission on the part of the Bar."

We think that the BOG's adoption of Art. III § 6 was a permissible exercise of discretion. Our conclusion is buttressed by our explicit recognition in this opinion of the critical (and in this case decisive) distinction between disciplinary and administrative suspensions. Because a sus-

---

of the suspension should be taken into account.
*Id.* at 1229.

**20.** The BOG maintains that the adoption of Art. III § 6, as it now reads, was "spurred" by this court's rejection, a quarter of a century ago, of the BOG's retroactive reinstatement of another attorney, Gary Jordan, Esquire. In 1980, after the BOG had granted Jordan's request for reinstatement *nunc pro tunc*, Jordan applied for a certificate of good standing from this court. He requested the court to certify that he had been in good standing during the time in which his membership had been suspended. Jordan's request was denied, and he was informed that "[t]he [c]ourt will execute a certificate reflecting the true circumstances of your situation."

**21.** According to counsel for the BOG, approximately 2,200 members of the Bar are placed on administrative suspension each year. The record does not reflect, however, how many of those members request reinstatement *nunc pro tunc*.

pension pursuant to Rule II is administrative in nature and therefore "casts no reflection on the member's moral qualifications," *Sonnenreich*, 86 P.3d at 718, reinstatement *nunc pro tunc* is not necessarily called for whenever an attorney who has failed to pay dues belatedly cures his or her delinquency. In our view, the BOG did not exceed its authority by declining to provide for retroactive reinstatement where the error was apparently the attorney's, not the BOG's. Rather, under the provisions of Art. III § 6, the record of an attorney suspended pursuant to Rule II correctly reflects the reality of the situation, namely, that for a certain period of time that member's Bar membership was suspended because he or she had failed to pay membership dues.[22] The BOG did not abuse its discretion by deciding that as a class, such cases are not "appropriate" for reinstatement *nunc pro tunc*.

■ Finally, we address the question whether Sitcov's situation falls within the narrow confines of Art. III § 8, which permits retroactive reinstatement "where it is apparent that the suspension . . . resulted from error or omission on the part of the Bar." Sitcov alleges that the Bar failed to deliver dues notices to him, and that this failure on the Bar's part constitutes an "omission" entitling him to retroactive reinstatement. In support of this claim, Sitcov represents that he never received any notice, and he relies on the Bar's inability to produce "copies of any of the purported dues notices it claims to have sent [him]." In response, the Bar proffers affidavits detailing the methods which it employs for mailing dues notices and reminders to members of the Bar. According to Albert L. Wilcox, the Director of Operations for the Bar, notices and reminders are generated by computer, and they are sent by First Class Mail[23] to "the member's preferred mailing address on file, his or her secondary mailing address, if any was provided, and his or her e-mail address."

■ Sitcov does not contend that the primary and secondary mailing addresses on file with the Bar, to which the Bar claims that it mailed Sitcov notices, were incorrect. There is, of course, a presumption that mail, "properly addressed and stamped," was received by the addressee. *See Toomey v. District of Columbia*, 315 A.2d 565, 567 (D.C.1974) (per curiam) (quoting *Columbia Fin. Co. v. Worthy*, 141 A.2d 185, 186 (D.C.1958)). Moreover, as we have seen, the Bar retains copies of any mail returned to it by the United States Postal Service as undeliverable, and, according to the Bar, no mail addressed to Sitcov was returned during the relevant period. On the record presented,[24] the BOG could reasonably find that it is not

---

**22.** To represent that an attorney who has failed to pay dues for three years, and who was suspended after the first year's non-payment, has been in good standing throughout the period of delinquency is, effectively, to rewrite history. To assert, in effect, that the lawyer was not suspended when, in fact, he or she was, and to treat the suspension as if it had not occurred, may be permissible where it is apparent that the fault is the Bar's, but not when neglect by the attorney was involved. At the very least, the BOG, in promulgating its by-laws, could reasonably so conclude.

**23.** In his affidavit, Mr. Wilcox explains:

All dues mailings and suspension notices are sent to members by First Class Mail. The D.C. Bar uses First Class Mail so that the notices are forwarded to a new address, if appropriate, or are returned to the D.C. Bar if an address is undeliverable for any reason.

**24.** No party has asserted that the record before us is insufficient to resolve this issue.

"*apparent* that the suspension ... resulted from error or omission on the part of the Bar," (emphasis added), within the meaning of Art. III § 8.[25]

Sitcov and *amici* also contend that the Bar committed "an error or omission" by sending Sitcov notification of his failure to pay dues to an erroneous e-mail address. Neither the Bar Rules nor the by-laws require, however, that notification of default be sent by e-mail. Rather, the BOG has adopted the practice of e-mail notification in an effort to increase efficiency and encourage compliance by its members. We agree with the Bar that this practice does not obviate an attorney's obligation to pay annual membership dues even in the event that the e-mail notification should go astray.

Sitcov does not deny that from September 30, 2002 to November 7, 2004, he failed to pay any of his membership dues at all. He was surely aware, or should have been aware, of his obligation to do so. Under the circumstances, we agree with the Bar's position that this is not an "appropriate case" for reinstatement *nunc pro tunc.*

### IV.

### CONCLUSION

For the foregoing reasons, we dismiss all of Sitcov's non-federal claims, and we vacate this court's order of April 12, 2005,

**25.** The foregoing discussion relates solely to Sitcov's claim that he was entitled to retroactive reinstatement pursuant to Art. III § 8. We do not address the related question whether the notice provided by the Bar satisfied the requirements of due process, a claim which Sitcov has raised in the United States District Court but not in this court. See *infra* note 26.

**26.** We decline the Bar's invitation to decide Sitcov's constitutional claims, which he has not raised in these proceedings. Although we

temporarily reinstating Sitcov *nunc pro tunc.*

*So ordered.*[26]

think it is appropriate for this court to address all of the parties' contentions involving interpretation and application of our Bar Rules and of the BOG's by-laws under our "inherent authority to define, regulate, and control the practice of law" in the District of Columbia, we are not prepared to entertain constitutional contentions which Sitcov raised before the United States District Court, but not before this court.