*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CV-0366

LARRY KLAYMAN, APPELLANT,

V.

BOARD ON PROFESSIONAL RESPONSIBILITY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2024-CAB-000048)

(Hon. Neal Kravitz, Motions Judge)

(Submitted March 4, 2025                                    Decided April 17, 2025)

*Larry Klayman*, pro se.

*Eric Yaffe* was on the brief for appellee.

Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: Appellant Larry Klayman appeals from a Superior Court order dismissing his suit against the Board on Professional Responsibility (the Board) for lack of subject matter jurisdiction. "Because the issue of subject matter jurisdiction is a question of law, . . . our standard of review is de novo." *Sum-Slaughter v. Fin. Indus. Regul. Auth., Inc.*, 320 A.3d 313, 321 (D.C. 2024) (alteration in original) (quoting *Slater v. Biehl*, 793 A.2d 1268, 1271 (D.C.

2002)).  Applying this standard, we affirm.

## I.  Factual and Procedural Background

In 2018, the Office of Disciplinary Council (ODC) initiated a disciplinary complaint against Mr. Klayman, alleging various violations of the D.C. Rules of Professional Conduct in connection with alleged misrepresentations of his disciplinary history in an application for admission pro hac vice in the Federal District Court for the District of Nevada.  The Board's Ad Hoc Hearing Committee held a three-day evidentiary hearing in July 2019, after which it issued an order stating that it "could not make a preliminary finding that Disciplinary Counsel had proven any disciplinary rule violation" and requesting supplemental briefing from the parties.  Upon receipt of this briefing, the Hearing Committee issued an order on January 16, 2020, in which it announced that it had made "a preliminary, non-binding determination that Disciplinary Counsel ha[d] proved at least one of the [ethical] Rule violations charged" by ODC, and thus that it was "prepared to consider matters in aggravation and mitigation of sanction."  The Hearing Committee convened for the mitigation and aggravation hearing in September 2020 but did not issue its final report until three years later, in September 2023, when it recommended a one-year suspension with a fitness requirement.

Mr. Klayman filed a Notice of Exceptions to the Hearing Committee's report, in which he argued, among other things, that the Hearing Committee had violated Bd. Pro. Resp. R. 12.2, which provides that "[t]he Hearing Committee's report shall be filed with the Board not later than 120 days following the conclusion of the hearing," and that the report was thus "void and must . . . be immediately dismissed." In December 2023, the Board held a hearing to consider both parties' exceptions to the report.

Before the Board issued its own final report and recommendation, Mr. Klayman filed suit against the Board in Superior Court for breach of contract and violation of his right to equal protection under the Fourteenth Amendment to the Constitution. Both claims were based on the Hearing Committee's alleged noncompliance with Rule 12.2: Mr. Klayman asserted he had a contractual right to the enforcement of the rule as a dues-paying member of the D.C. Bar and that the Board had failed to apply the rule equally to him "as a conservative, Caucasian, and male public interest attorney of Jewish origin." As relief for his contract claim, Mr. Klayman asked the Superior Court to "mandate[e] that the Board enforce its own Rules . . . and dismiss the [disciplinary proceeding against Mr. Klayman] in its entirety." Similarly, as relief for his equal protection claim, he asked the Superior Court to "enjoin[]" the Board "from proceeding further" with this disciplinary matter. In addition, Mr. Klayman asked the Superior Court to "order that the Board

conduct a review as to how the [Hearing Committee] and ODC were allowed to ignore and blatantly and willfully violate Board Rule 12.2."

The Board filed a motion to dismiss Mr. Klayman's complaint on the grounds that (1) the Board, as an instrumentality of the Court of Appeals, is immune from suit; (2) the Superior Court lacked subject matter jurisdiction because the Court of Appeals has exclusive authority over attorney disciplinary proceedings; (3) Mr. Klayman lacked standing; and (4) the complaint failed to state a plausible claim for relief. The Superior Court granted the Board's motion. The court relied on its determination that it lacked subject matter jurisdiction because the Court of Appeals has "exclusive authority over all matters concerning the admission to, censure, and suspension and expulsion from the practice of law in the District," although the court observed that "[s]everal of the [Board's other] arguments likely have merit." Mr. Klayman timely appealed the Superior Court's order, and that is the appeal currently before this division of the court.

Meanwhile, the Board issued its Report and Recommendation to the Court of Appeals in Mr. Klayman's disciplinary proceeding, concluding that ODC had proven by clear and convincing evidence that Mr. Klayman had violated a number of ethical rules and recommending an eighteen-month suspension with a fitness requirement. As of April 2025, that case, 24-BG-0689, was fully briefed and is

scheduled for argument in May.

## II.    Discussion

Mr. Klayman argues that the Superior Court erred in concluding that it lacked subject matter jurisdiction because it "misconstrue[d] and misinterpret[ed] the relief sought by [him]."  Specifically, he argues that he "is not at this time challenging the *outcome* of an attorney discipline proceeding.  He is challenging the *ongoing process* which has denied him due process and other constitutional and legal rights, and there is no Court other than the [Superior] Court where this type of challenge can occur." In support of this argument, he asserts that "the Board is akin to an administrative agency," and he notes that "there is a litany of cases showing that agencies are subject to court intervention when they refuse to follow and comply with their own rules imposed on them by a higher authority, such as this Court or Congress."  We are unpersuaded by Mr. Klayman's attempt to recast his suit as having nothing to do with the outcome of his disciplinary case, his narrow interpretation of this court's exclusive jurisdiction over bar matters, and his invocation of inapposite administrative law cases.

Mr. Klayman's effort to distinguish the "*ongoing process*" of an attorney disciplinary proceeding from the "*outcome*," so as to carve out a space in which the Superior Court might be authorized to rule, is unhelpful.  First, the relief

Mr. Klayman requests in his complaint is that the Superior Court dismiss the disciplinary proceeding in its entirety, which clearly implicates the outcome of his case. Second, Mr. Klayman's argument disregards this court's exclusive jurisdiction to oversee *both* the processes and the outcomes of disciplinary proceedings.

Regarding this second point, as we have previously explained, in the District of Columbia, "the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *See In re Doman*, 314 A.3d 1219, 1231-32 (D.C. 2024) (quoting *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam)). Section 11-2501(a) of the D.C. Code provides that this court "shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." To this end, this court has promulgated a number of rules, including the D.C. Rules of Professional Conduct—which define substantive standards of conduct for attorneys licensed to practice in the District—and the D.C. Bar Rules—which, inter alia, establish the Board on Professional Responsibility, D.C. Bar R. XI, § 4; set forth procedures for attorney discipline proceedings, allowing for fact finding before a hearing committee and review by the Board and this court but assigning no role to the Superior Court, *id.* §§ 8, 9; and grant to the Board the authority to adopt additional "rules, procedures, and policies," *id.* § 4(e)(10). "[O]ur original jurisdiction" over all rules promulgated pursuant to Section 11-2501(a) is "exclusive

of, not concurrent with, that of the Superior Court." *Kennedy v. Educ. Testing Serv.,
Inc.*, 393 A.2d 523, 525 (D.C. 1978) (explaining that this court has "original
jurisdiction" over petitions for review of admission examinations and that the
Superior Court properly declined to exercise jurisdiction over a bar applicant's
request to review his graded exam because it "might have encroached upon [this
court's] jurisdiction").[1]

Mr. Klayman suggests that *Kennedy* and its discussion of the exclusivity of
this court's authority is inapposite because *Kennedy* involved "a challenge to a
policy and rule that essentially stated that no review of an applicant's objective
'multiple choice' portion of the bar exam was permitted"; by contrast, Mr. Klayman
argues, he "is not arguing that Rule 12.2 is invalid" but rather "the exact opposite,
that it is valid and must be enforced." Mr. Klayman misreads *Kennedy* as narrowly
addressing "a challenge to a policy and rule"; in fact the court in *Kennedy*

---

[1] This court reaffirmed the exclusivity of our jurisdiction over bar-related
matters in *Sitcov v. D.C. Bar*, 885 A.2d 289 (D.C. 2005). In that case, we considered
whether the Court of Appeals had authority to directly review a decision by the Bar's
Board of Governors "in the absence of a statute authorizing us to do so." *Id.* at 294.
We concluded that we did, explaining that "this court necessarily has the authority
to review a decision by an entity which this court created, when that decision pertains
to an issue with respect to which the court is vested with the final authority." *Id.* at
295. This conclusion was based in part on the understanding that, if the Court of
Appeals could not review these decisions, "then [the plaintiff] *would have no
judicial remedy at all* under District of Columbia law, regardless of the merits of his
position." *Id.* (emphasis added). In other words, we rejected the possibility that the
Superior Court might have jurisdiction.

characterized the plaintiff's claims, and the court's authority, more broadly, explaining that all the claims asserted in Superior Court "relate[d] to the failure of the Committee on Admissions to certify appellant to this court for admission to the Bar, a function within the exclusive control of this court." 393 A.2d at 525. But in any event, just as the Superior Court lacks the authority to invalidate rules promulgated under Section 11-2501, so too does it lack the authority to interpret how those rules should be applied. Mr. Klayman's claims in this case implicate a number of interpretive questions, among them whether the timing requirement of Rule 12.2 is mandatory or permissive, whether any extension of time is allowed under the rule, and what the consequences are of an untimely filed report. And any such interpretation of Rule 12.2 by the Superior Court would necessarily intrude on this court's exclusive authority over bar discipline matters. In short, the Superior Court simply has no role to play in these proceedings.

Mr. Klayman is wrong to assert that "there is no [c]ourt other than the [Superior] Court where" he can make his arguments about the Hearing Committee's alleged noncompliance with Rule 12.2. Mr. Klayman could have requested relief from this court at any time during the three years that his case was with the Hearing Committee. *Cf. Sitcov,* 885 A.2d at 297 (reviewing decision by Bar Board of Governors from "Petition for Original Jurisdiction"); *Kennedy,* 393 A.2d at 525 ("This court has authority to entertain a petition for review of admission

examinations even though such review is not afforded by rule."). And indeed Mr. Klayman *did* request relief from this court following the issuance of the Hearing Committee's final report and recommendation; he filed a Petition for Writ of Mandamus on October 6, 2023, requesting an order directing the Board to dismiss his disciplinary case because the Hearing Committee had failed to comply with Rule 12.2. This court denied his petition, not because we lacked the power to entertain it, but because Mr. Klayman had insufficiently substantiated his need for such extraordinary relief. We explained that Mr. Klayman had

> not shown that he cannot seek review once the Board on Professional Responsibility completes its hearings and files a Report and Recommendation with this court. *See Banov v. Kennedy*, 694 A.2d 850, 857 (D.C. 1997) ("The requirements for issuance of a writ of mandamus are that the party seeking the writ must show that his right is 'clear and indisputable,' and that he 'has no other adequate means to obtain relief.'") (quoting *Stebbins v. Stebbins*, 673 A.2d 184, 193 (D.C. 1996)).

As the order indicated, Mr. Klayman may challenge the Hearing Committee's failure to comply with Rule 12.2 when his disciplinary case reaches this court for review in the regular course. *See* D.C. Bar R. XI, § (9)(h)(1). And he has done so. Mr. Klayman filed a brief in 24-BG-0689 raising the same arguments he raised in his Superior Court complaint, and, as noted above, that case is scheduled for argument before this court in May.

Mr. Klayman's invocation of administrative law cases wherein courts have

required agencies to adhere to their own promulgated rules and regulations is unpersuasive. Were this matter properly categorized as administrative in nature—but it is not[2]—that would not help his case; after all, "[i]t is a common law rule of long-standing that, in litigation involving a government agency, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Owens v. D.C. Water & Sewer Auth.*, 156 A.3d 715, 719-20 (D.C. 2017) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). And again, the question is not whether *any* court can tell the Board to follow its own rules; given the arguments he has briefed in 24-BG-0689, Mr. Klayman would surely agree that, if this court found that the Hearing Committee had violated a rule, we would have the authority to say so. Rather, the question is *which* court has proper jurisdiction to hear those challenges. The answer is the Court of Appeals, not the Superior Court.

Because we agree that the Superior Court lacked subject matter jurisdiction to hear Mr. Klayman's case, we need not consider the other arguments for dismissal that the Board raised in its motion to dismiss and which Mr. Klayman challenges in

---

[2] The Board is not an administrative agency falling within the executive branch, but rather an "arm" of the Court of Appeals, *Sitcov*, 885 A.2d at 295, which is in turn a congressionally created court, District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 111, 84 Stat. 473, 475 (1970).

his brief to this court.

For the foregoing reasons, the order of the Superior Court is affirmed.

*So ordered*.