## A1 TEAM USA HOLDINGS, LLC, Appellant,

v.

## BINGHAM McCUTCHEN LLP, Appellee.

No. 09–CV–1205.

District of Columbia Court of Appeals.

Argued June 9, 2010.
Decided July 1, 2010.

*tion,* 45 A.L.R.5th 715 (1997).

George R.A. Doumar, Arlington, VA, for appellant.

Warren Anthony Fitch, Washington, DC, for appellee.

Before REID, GLICKMAN and OBERLY, Associate Judges.

REID, Associate Judge:

 This is a case of first impression involving amendments to the District of Columbia Uniform Arbitration Act. Appellant, A1 Team USA Holdings, LLC ("A1"), claims that the amendments "provide[ ] a substantial new basis for vacating arbitral awards," and that the trial court committed reversible error by failing to recognize the "substantial expansion of [the] court's authority to vacate arbitral awards compared to the repealed statute." We conclude that D.C.Code § 16–4423(b),[1] one of the new statutory provisions under which "[t]he court may vacate an award made in the arbitration proceeding on other reasonable ground," does not authorize *de novo* review of an arbitrator's award. Rather, this court's review of an arbitration award is still extremely limited. We affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record reveals that A1 entered into an attorney/client relationship with appellee, Bingham McCutchen LLP ("Bingham") on January 9, 2008; A1 asked Bingham to assist in the resolution of certain franchise matters with A1 Holdings Limited. The engagement letter between the parties specified a billable hourly rate ranging from $335.00 to $750.00 an hour, with a nonbinding estimate of $75,000.00 for Phase I of the legal representation. A1 and Bingham agreed to resolve all disputes "by binding arbitration under the auspices and applicable rules of JAMS or the American Arbitration Association (AAA), whichever [A1] prefers, in Washington, D.C."

Subsequently, A1 protested the amount of the fees charged by Bingham. The parties attempted to resolve their disagreement through settlement negotiations, but the parties dispute whether they ultimately reached an agreement. In any event, A1 paid only $75,000.00 of the $190,000.00 Bingham originally billed, and filed an arbitration claim on November 10, 2008, seeking the return of fees paid to Bingham. A1 contended that Bingham had a conflict of interest due to the law

1. D.C.Code §§ 16–4423(a) and (b) provide:
 Vacating award
 (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
 (1) The award was procured by corruption, fraud, or other undue means;
 (2) There was:
 (A) Evident partiality by an arbitrator appointed as a neutral arbitrator;
 (B) Corruption by an arbitrator; or
 (C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
 (3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to § 16–4415, so as to prejudice substantially the rights of a party to the arbitration proceeding;
 (4) An arbitrator exceeded the arbitrator's powers;
 (5) There was no agreement to arbitrate; or
 (6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in § 16–4409 so as to prejudice substantially the rights of a party to the arbitration proceeding.
 (b) The court may vacate an award made in the arbitration proceeding on other reasonable ground.

firm's prior representation of A1 Holdings Limited, beginning in 2006; and hence, Bingham should not have agreed to represent A1. A1 further argued that Bingham's computerized research billings were excessive.

The AAA arbitrator issued her award on April 16, 2009, finding that:

> (1) there was not a conflict of interest that would have barred [Bingham] from representing [A1], and (2) the amount of $9,542.76 charged by [Bingham] for computerized legal research, which was calculated at a rate of over $1,100.00 per hour, is in excess of the actual charges by the service provider to [Bingham] and is beyond what a reasonable client would expect absent clear disclosure in advance of billing.

Following adjustments, the arbitrator determined that A1 owed Bingham $48,869.31.

On April 29, 2009, Bingham filed in the trial court a motion for confirmation of the arbitration award and entry of judgment. A1 filed an answer on May 27, and on July 13, lodged a motion to vacate the arbitration award on the ground that it "is unreasonable," and also "on public policy grounds." The trial judge concluded that the "other reasonable ground[s]" statutory language could not be interpreted "as a grant of *de novo* review to trial courts in vacating arbitral awards"; hence, the court declined to review the merits of the conflict of interest allegation and the reasonableness of the legal fees. In addition, the court rejected A1's public policy argument, and entered judgment in favor of

Bingham in the amount of $48,869.31. A1 noted a timely appeal.

## ANALYSIS

 A1 argues that "the trial court improperly applied the revised Uniform Arbitration Act by conducting its evaluation of this matter under an 'extremely limited' standard of review, and not under the revised statute's reasonableness standard." A1 maintains that "a court can now vacate an arbitral award on any 'reasonable' basis." Furthermore, A1 claims that "[t]he available legislative history signals a public policy of protecting plaintiffs by providing for broader judicial review of arbitral awards," and that "[t]he legislature viewed these new [statutory] provisions as counterweights to a seeming plaintiff and consumer-hostile arbitration process."

In response to A1's arguments, Bingham contends that:

> In the absence of any legislative history ..., there is no ground for concluding that [D.C.Code § 16–4423(b) ] was added to radically alter the arbitration process without any legislative consideration or analysis or to eviscerate the arbitration process by requiring essentially *de novo* adjudication by the courts of the countless arbitrations conducted in the District of Columbia every year.

Bingham further takes issue with A1's public policy argument, insisting that "A1 has not established any violation of public policy." [2]

Consistent with Bingham's position, we conclude that neither the National Conference of Commissioners on Uniform State Laws ("NCCUSL"),[3] nor the Council of

---

2. In light of our disposition, we do not consider Bingham's argument that A1 failed to present an adequate record for this court's consideration.

3. The NCCUSL's membership consists of commissioners from the various States of the

union, the District of Columbia, the Commonwealth of Puerto Rico, and the United States Virgin Islands. Since 1892, its mission has been to draft uniform laws for adoption by its member jurisdictions. The original Uniform Arbitration Act was adopted by 49 jurisdic-

the District of Columbia, intended that the revised provisions of the Uniform Arbitration Act ("UAA"), including those relating to vacating an arbitration award, would convert limited judicial review of the award to a *de novo* judicial merits review of claims made in arbitration proceedings. Because the UAA had been promulgated in 1955 by the NCCUSL, it no longer provided answers to many modern-day issues in the arbitration process. Hence, the major impetus for revisions to the UAA centered on developing guidance on a variety of issues such as (1) "who decides the arbitrability of a dispute and by what criteria," and (2) "the use of electronic information and other modern means of technology in the arbitration process."[4] None of the fourteen issues identified by the NCCUSL concerned the judicial standard for reviewing an arbitration award.

The Council adopted the NCCUSL's 2000 revision of Section 23(a) almost verbatim.[5] But, while the Council's bill, as introduced, contained the NCCUSL's subsection (b),[6] the Council's engrossed and enrolled original bills contained a completely different subsection (b), specifying that "The court may vacate an award made in the arbitration proceeding on other reasonable ground." When and why subsection (b) was changed to reflect the current language is a mystery; there is no legislative history explaining the substitution of the existing subsection (b) for the NCCUSL's subsection (b).

Nothing in the NCCUSL's comments relating to Section 23 even remotely suggests an intent to fundamentally change the nature of judicial review of arbitration awards. To the contrary, the NCCUSL considered but decided, after reviewing federal case law involving the Federal Arbitration Act ("FAA"), not to add provisions to Section 23 which would have allowed vacatur of an arbitration award on the grounds of "manifest disregard of the law" and "public policy."[7] In part, the

---

tions, and many of those jurisdictions have adopted or are in the process of introducing the revised act for enactment by the legislature. *Introduction*, NCCUSL, http://www.nccusl.org/Update/DesktopDefault.aspx?tabindex=0&tabid=11 (last visited June 21, 2010); *Uniform Arbitration Act*, NCCUSL, http://www.nccusl.org/Update/uniformact_summaries/uniformacts-s-aa.asp (last visited June 21, 2010).

4. Uniform Arbitration Act, Prefatory Note, 7 U.L.A. (Part 1) 2–3 (2000).

5. There was a slight modification to § 23(a)(5).

6. Subsection 23(b) in NCCUSL's 2000 revision provided:

A [motion] under this section must be filed within 90 days after the [movant] receives notice of the award pursuant to Section 19 or within 90 days after the [movant] receives notice of a modified or corrected award pursuant to Section 20, unless the [movant] alleges that the award was procured by corruption, fraud, or other undue

means, in which case the [motion] must be made within 90 days after the ground is known or by the exercise of reasonable care would have been known by the [movant]. Uniform Arbitration Act § 23(b), 7 U.L.A. 74 (Part 1) (2000) (alterations in original). This provision appears almost verbatim at D.C.Code § 16–4423(c).

7. In Comment C regarding § 23, the NCCUSL explained its decision not to include these provisions:

There are reasons for the [Revised Uniform Arbitration Act] RUAA not to embrace either the "manifest disregard" or the "public policy" standards of court review of arbitral awards. The first is presented by the omission from the FAA of either standard. Given that omission, there is a very significant question of possible FAA preemption of such a provision in the RUAA, should the Supreme Court or Congress eventually confirm that the four narrow grounds for vacatur set out in Section 10(a) of the federal act are the exclusive grounds for vacatur. The second reason for not

rationale for omitting these grounds was a desire for uniformity between the federal vacatur provision and that adopted by the states. The federal vacatur provision, 9 U.S.C. § 10, contains only four narrow grounds on which an arbitration award may be vacated.[8] Significantly, during its four years of deliberations, the Drafting Committee for the revised Uniform Arbitration Act had debated whether or not to add to Section 23 "a provision that the parties could 'opt in' to judicial review of arbitration awards for errors of law or fact or any other grounds not prohibited by applicable law."

The Council also was cognizant of the need for uniformity with the federal act. As the Committee Report on the proposed Council amendments stated:

> Bill 17–50, the "Arbitration Amendments Act of 2007" reflects changes made by the RUAA. The RUAA has

been drafted against the preemptive presence of the Federal Arbitration Act (FAA).... The FAA encourages arbitration as an alternative to litigation. Therefore, any state law that limits the availability of arbitration risks failure as a result of federal preemption. Although there is not complete agreement about the relationship between federal and state law on certain specific issues, the RUAA is drafted to avoid preemption.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SAFETY AND THE JUDICIARY, REPORT ON BILL 17–50, THE "ARBITRATION AMENDMENTS ACT OF 2007," June 4, 2007, at 2. The Committee Report identifies areas in which the Council added provisions not reflected in the NCCUSL draft. These related to "the view of many ... that the arbitration process has been slanted in the

---

including these vacatur grounds is the dilemma in attempting to fashion unambiguous, "bright line" tests for these two standards. The case law on both vacatur grounds is not just unsettled but also is conflicting and indicates further evolution in the courts. As a result, the Drafting Committee concluded not to add these two grounds for vacatur in the statute. A motion to include the ground of "manifest disregard" in Section 23(a) was defeated by the Committee of the Whole at the July, 2000, meeting of the [NCCUSL].
Uniform Arbitration Act § 23, 7 U.L.A. (Part 1) 81 (2000).
Regarding vacatur on the ground of public policy, *see Fairman v. District of Columbia*, 934 A.2d 438, 442–43 (D.C.2007) ("An exception has been recognized to the requirement that an arbitration award can be vacated only on statutory grounds. It is well settled that an 'arbitration award may not stand if it contravenes paramount considerations of public policy.'") (internal quotation marks and citations omitted). With respect to "manifest disregard of the law" as a ground for vacatur, *see Cathedral Ave. Coop., Inc. v. Carter*, 947 A.2d 1143, 1151 (D.C.2008) ("[T]his court has acknowledged that 'where it appears that the arbitrator manifestly disre-

garded the law, court inquiry may be undertaken,' at least when the decision approaches 'being arbitrary and capricious.'") (quoting *Lopata v. Coyne*, 735 A.2d 931, 940 (D.C. 1999)).

8. 9 U.S.C. § 10 provides:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

favor of business over consumers." *Id.* They included amendments regulating "arbitration service providers"; and "a requirement for the disclosure of arbitration costs." *Id.* Another provision concerned insurance contracts. *Id.* None of the Council additions identified in the Committee Report focused on the judicial standard for review of arbitration awards. Moreover, we have been unable to find any supplemental legislative history that addresses § 16–4423(b).

The Committee on Public Safety and the Judiciary held hearings on the proposed Arbitration Amendments Act of 2007 on March 23, 2007. Those testifying included representatives of the NCCUSL, the insurance industry, and attorneys representing client or consumer interests. The hearing testimony was devoted mainly to amendments concerning attorney's fees, punitive or exemplary damages, arbitration clauses in insurance contracts, regulation of arbitration providers, and the impact of mandatory binding arbitration on consumers. Subsequently, the full Council considered the proposed Arbitration Amendments Act of 2007 at legislative sessions on June 5, October 2, and December 11, 2007. During each of these sessions, there was no mention of any Council intent to broaden judicial review of arbitral awards, and no discussion of what is now D.C.Code § 16–4423(b).[9]

In short, we see nothing in the legislative history to support A1's argument that under the revised Arbitration Act, this court "can now vacate an arbitral award on *any* 'reasonable' basis"; but there is support in the drafting history of the revised act that the NCCUSL never intended to abandon the standard of narrow and extremely limited judicial review of an arbitration award. There is also nothing in the legislative history of the Council's Arbitration Act amendments suggesting any intent to deviate from that standard of review, or to permit vacatur on "any 'reasonable' basis." Absent explicit language and legislative history and (in light of the Drafting Committee's expressed decision not to include an "opt in" provision, *see supra* ), we cannot agree with A1's contention that the Council meant subsection (b) to authorize merits review of arbitration awards.

■ Consequently, the trial court correctly applied the traditional limited or extremely limited standard in reviewing the arbitrator's award in this case. As we noted in *Certain Underwriters at Lloyd's London v. Ashland, Inc.,* 967 A.2d 166, 175 n. 9 (2009):

> We generally afford great deference to an arbitrator's decision. *See Schwartz v. Chow,* 867 A.2d 230, 233 (D.C.2005) ("It is firmly established that '[j]udicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden.' ") (citations omitted).... "This limited review serves to attain a balance between the need for speedy, inexpensive dispute resolution, on the one hand, and the need to establish justified confidence in

9. The Council's limited discussion of amendments it made (that were not in the NCCUSL revised act) centered on efforts to address insurance contracts of adhesion (standard or boilerplate provisions) which required mandatory binding arbitration. Consumer advocates viewed this requirement as unfavorable to consumers, placing them in a weak position relative to the strength of large companies which usually select the arbitrators. Council members who spoke during the June 5 session emphasized the need for measures that would protect consumers, without compromising expeditious, speedy resolution of disputes through arbitration, and without inundating the courts with additional litigation. Council Legislative session, June 5, 2007: http://oct.dc.gov/services/ondemandvideo/channel13/June2007/060507COWLEG.asx

arbitration among the public, on the other." (citation omitted).

Despite NCCUSL's decision not to include the "public policy" exception in its revision, our prior case law has recognized a public policy exception as a ground for vacating an arbitral award. *See Fairman, supra,* 934 A.2d at 442. Assuming that exception falls within the statutory language "on other reasonable ground[s]," *see* D.C.Code § 16–4423(b), A1 would not be entitled to a broader review of the arbitration award. As we have declared previously: "The refusal to enforce the arbitrator's decision on public policy grounds requires some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." 934 A.2d at 443 (internal quotation marks and citations omitted). Here, however, A1 speaks only in generalities and mentions the general rule that "attorney[']s fees must be 'reasonable,'" with a general citation to Rule 1.5 of the Professional Conduct and a citation to the opinion of a law professor which A1 solicited. A1 does not identify a fundamental, well-defined policy that is "implicit 'in statutes or municipal regulations, or in the Constitution,'" *see District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 645 (2005) (en banc) (citing *Carl v. Children's Hosp.,* 702 A.2d 159, 164 (D.C.1997) (en banc)), that is violated by the arbitrator's award. Hence, A1 does not satisfy the requirements for vacatur on public policy grounds.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court confirming the arbitrator's award.

*So ordered.*