*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-546

BIOTECHPHARMA, LLC, *et al.*, APPELLANTS,

V.

LUDWIG & ROBINSON, PLLC, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-884-13)

(Hon. Brian F. Holeman, Trial Judge)

(Argued October 31, 2013                    Decided September 4, 2014)

*Albert Wilson, Jr.*, for appellants.

*Robert W. Ludwig*, with whom *Salvatore Scanio*, *James E. Tompert*, and *W. Clifton Holmes* were on the brief, for appellee.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *James C. McKay, Jr.*, Senior Assistant Attorney General, filed a brief for the District of Columbia, *amicus curiae*, in support of this court's jurisdiction over the present appeal.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

FISHER, *Associate Judge*:    Appellants—BiotechPharma, LLC; Converting

Biophile Laboratories, Inc.; and Dr. Raouf Albert Guirguis (collectively "BTP")—

are former clients of appellee Ludwig & Robinson, PLLC ("L&R"), a law firm. L&R sued BTP to collect unpaid legal fees, and BTP moved to stay the litigation and compel arbitration. After the trial court denied the motion, BTP brought this interlocutory appeal, arguing mainly that District of Columbia Bar Rule XIII[1] obligates L&R to arbitrate the fee dispute. We agree with BTP, reverse the trial court's order, and remand the case with instructions to compel arbitration.

## I. Procedural and Factual Background

BTP, a biotechnology firm, retained L&R as counsel in March 2011 to help resolve a trade secret dispute. The dispute was settled in May 2012, L&R having billed BTP on a monthly basis during the course of its representation. By June 2012 L&R claimed that BTP owed approximately $1.7 million in outstanding legal fees, disbursements, and expenses. In January 2013 L&R brought suit to collect its fees.

---

[1] Although popularly known as "D.C. Bar Rule XIII," this is actually a rule of this court, adopted "for the government of the Bar and the individual members thereof." Preamble, Rules of the District of Columbia Court of Appeals Governing the Bar of the District of Columbia.

Several weeks later, BTP responded to the complaint by filing a motion to stay the trial court proceedings and compel arbitration. In addition to claiming that L&R had expressly agreed to arbitrate the fee dispute, BTP argued that a binding agreement to arbitrate had been formed by operation of law. BTP cited Rule 8 of the D.C. Bar's Attorney/Client Arbitration Board ("ACAB"), which states that if a client files a petition to arbitrate a fee dispute with a lawyer, "the lawyer is deemed to have agreed to arbitrate." Although it was not mentioned in the trial court, D.C. Bar Rule XIII similarly provides that

> [a]n attorney subject to the disciplinary jurisdiction of [the District of Columbia Court of Appeals] shall be deemed to have agreed to arbitrate disputes over fees for legal services . . . when such arbitration is requested by a present or former client, . . . if a substantial portion of the services were performed by the attorney in the District of Columbia . . . .

L&R raised several arguments opposing BTP's motion to stay litigation and compel arbitration, although the firm had already acknowledged in its complaint that it "maintains its office and performed work related to this" matter in the District of Columbia. Ultimately, the trial court denied BTP's motion without clearly explaining why. BTP now appeals from that order.

## II.  Analysis

Before reaching the merits of BTP's appeal, we first address a jurisdictional issue raised by L&R.  We then consider whether the parties to this case had an enforceable arbitration agreement, and we conclude that such an agreement existed pursuant to D.C. Bar Rule XIII.  Finally, we treat (and reject) L&R's claims that Rule XIII is unconstitutional and that this court exceeded its authority by promulgating it.

### A.  Jurisdiction

L&R argues that we lack jurisdiction to hear this interlocutory appeal, despite a provision of the Revised Uniform Arbitration Act ("RUAA") that states: "An appeal may be taken from . . . [a]n order denying or granting a motion to compel arbitration."  D.C. Code § 16-4427 (a) (2012 Repl.).  According to L&R, the RUAA cannot serve as our jurisdictional predicate because it violates the Home Rule Act, which prohibits the Council of the District of Columbia from passing a law "with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)."  D.C. Code § 1-206.02 (a)(4) (2012 Repl.).  Among other things, Title 11 gives this court jurisdiction over

appeals from "final orders and judgments of the Superior Court" and interlocutory orders "refusing . . . injunctions." D.C. Code § 11-721 (a) (2012 Repl.). L&R argues that orders denying motions to compel arbitration are not orders "refusing . . . injunctions," nor do they qualify as appealable orders under any other provision of Title 11. Consequently, L&R asserts that the RUAA has impermissibly expanded this court's jurisdiction, thereby violating the Home Rule Act.

We disagree for two principal reasons. First, for more than twenty years, this court has routinely exercised jurisdiction over the type of appeal presented here. *See Giron v. Dodds*, 35 A.3d 433, 436-37 (D.C. 2012); *2200 M St. LLC v. Mackell*, 940 A.2d 143, 147 n.2 (D.C. 2007); *Nat'l Trade Prod. v. Info. Dev.*, 728 A.2d 106, 109 (D.C. 1999); *Benefits Commc'ns Corp. v. Klieforth*, 642 A.2d 1299, 1301 n.10 (D.C. 1994); *Friend v. Friend*, 609 A.2d 1137, 1139 n.5 (D.C. 1992); *Hercules & Co., Ltd. v. Beltway Carpet Serv., Inc.*, 592 A.2d 1069, 1071-72 (D.C. 1991). In doing so, we have regularly cited either the RUAA or its predecessor, the Uniform Arbitration Act ("UAA"), [2] as a proper basis for

---

[2] The UAA stated that "[f]or purposes of writing an appeal . . . [a]n order denying an application to compel arbitration" would "be deemed final." D.C. Code § 16-4317 (a) (2001). Unlike the RUAA, the UAA did not provide for appeals from orders *granting* motions to compel arbitration. *See id.*

jurisdiction. *See, e.g.*, *Friend*, 609 A.2d at 1139 n.5 (applying the UAA); *Giron*, 35 A.3d at 436-37 & n.1 (applying the RUAA). This history evinces our long-held premise that interlocutory appeals from orders denying motions to compel arbitration fit comfortably within our jurisdiction. That premise, which has become part of our jurisprudence, has neither threatened our independence nor otherwise proven unworkable, but L&R's position would require us to abandon it.[3]

Even if we set aside this extensive history (indeed, even if we set aside the RUAA and the UAA altogether), a second consideration supports our jurisdiction here. This court's 1981 decision in *Brandon v. Hines* involved an arbitration agreement not subject to the UAA, and we nevertheless concluded that "denials— but not grants—of stays of litigation pending arbitration are appealable interlocutory orders."[4] 439 A.2d 496, 507 (D.C. 1981). Several years later, in

---

[3] L&R's jurisdictional arguments implicate many of the issues raised in *Stuart v. Walker*, which this court recently heard *en banc*. 6 A.3d 1215 (D.C. 2010), *vacated*, 30 A.3d 783 (D.C. 2011) (en banc). However, *Stuart* dealt with an order granting (rather than denying) a motion to compel arbitration. 6 A.3d at 1215. The *en banc* court was evenly divided on the question of jurisdiction and failed to render an opinion. *See Stuart v. Walker*, No. 09-CV-900 (D.C. Feb. 16, 2012) (en banc) (unpublished judgment).

[4] In *Brandon*, a contractor appealed a trial court order that denied his motion to confirm an arbitration award, vacated the award, and directed the parties to trial. 439 A.2d at 497. In deciding that the order was immediately appealable under Title 11 as an order dissolving an injunction, the court found it necessary to first

(continued…)

*Hercules & Co., Ltd. v. Shama Rest. Corp.*, this court reaffirmed *Brandon*'s rule and explained that it "will remain the law of the District of Columbia unless and until it is reconsidered *en banc* or modified by statute." 566 A.2d 31, 38 (D.C. 1989).

Applying *Brandon*'s rule to this case resolves the concern L&R raises regarding the Home Rule Act, for if we may exercise jurisdiction pursuant to the terms of Title 11, then the RUAA's provision for interlocutory appeals works no change to this court's jurisdiction (at least, that is, with respect to orders *denying* motions to compel arbitration). *See Bank of Am. v. District of Columbia*, 80 A.3d 650, 660-61 (D.C. 2013) (relying on *Brandon* and recognizing that "[t]his court has exercised jurisdiction of an appeal from an order denying a motion to compel arbitration, concluding that it is a final order, appealable pursuant to D.C. Code § 11-721 (a)(1)").

---

(…continued)
determine that orders denying motions to compel arbitration should be treated (for purposes of appeal) as orders refusing injunctions. *Id.* at 500-09.

L&R argues that *Brandon* was incorrect at the time it was decided because it overlooked binding precedent in *John Thompson Beacon Windows, Ltd. v. Ferro, Inc.*, 232 F.2d 366 (D.C. Cir. 1956). However, the *John Thompson* court dealt primarily with the finality of an order in an independent proceeding.[5] *Id.* at 366-69. By contrast, the *Brandon* court focused carefully on whether an order refusing to stay ongoing litigation pending arbitration is appealable as an interlocutory order refusing an injunction. 439 A.2d at 497, 500-09 (analyzing D.C. Code § 11-721). Consequently, *John Thompson* did not control *Brandon* and does not control here. *See Parker v. K & L Gates, LLP*, 76 A.3d 859, 864 n.3 (D.C. 2013) ("Because this case arises in the context of an independent proceeding, we have no occasion to consider the appealability of orders compelling arbitration in other contexts.").

---

[5] An independent proceeding is an action "in which a request to order arbitration is the sole issue before the court." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 87 (2000). *John Thompson* involved an independent proceeding because a seller had filed suit for the sole purpose of seeking enforcement of an arbitration agreement. 232 F.2d at 366-67. The trial court denied the seller's initial motion to compel arbitration, and the seller appealed before the trial court could complete a statutorily prescribed process for summarily trying the issue. *Id.* at 367. On appeal, then, the jurisdictional question was whether the order appealed from represented the final resolution of the independent proceeding. *Id.* at 367-69. Although neither party argued the order at bar was injunctive, the court considered and rejected that possibility in cursory fashion. *Id.* at 369. In doing so, the court based its brief analysis on the federal jurisdictional statute, 28 U.S.C. § 1292 (1952). *Id.* Thus, *John Thompson* is distinguishable not only because it arose in a different procedural setting, but also because it dealt with a different jurisdictional statute than the one at issue here.

In summary, *Brandon* and *Hercules* remain binding authority and apply to this case. Moreover, the result *Brandon* commands here is consistent with the long line of cases in which we have exercised jurisdiction over appeals like this one. We have no reason (and, in fact, no discretion) to depart from our precedent. Having determined that we have jurisdiction to decide this appeal, we now turn to the merits of BTP's claim.

## B. L&R's Agreement to Arbitrate

BTP argues that the trial court erred in denying its motion to stay litigation and compel arbitration. Because a trial court must grant such a motion where a valid arbitration agreement exists, *see* D.C. Code § 16-4407 (b) (2012 Repl.), the central question before us is whether L&R and BTP had such an agreement.[6] This

---

[6] Before reaching the question of whether there was an agreement to arbitrate, L&R would have us hold that there was not even a dispute to arbitrate. *See Reed Research, Inc. v. Schumer Co.*, 243 F.2d 602, 604-05 (D.C. Cir. 1957) (relying on theory of "an account stated" to hold that no genuine issue of material fact precluded summary judgment). However, BTP's first filing in this case avers that the company "disputes the amount of attorney's fees sought" by L&R. This statement is enough to establish the existence of a dispute. To compel arbitration, a party need not produce evidence of a dispute sufficient to survive a motion for summary judgment. *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992).

is a question of law that we review *de novo*. *Giron*, 35 A.3d at 437. The relevant facts are not in dispute.

## 1. Was There an Express Agreement to Arbitrate?

BTP suggests that because arbitration agreements are "irrevocable" under the RUAA, emails from L&R communicating its willingness to arbitrate were immediately binding. We disagree. Mere offers to arbitrate are not irrevocable, and the record demonstrates that L&R's first offer to arbitrate was not accepted by BTP. L&R's second offer was conditioned on ACAB's acceptance of BTP's petition, and L&R revoked this conditional offer long before BTP filed such a petition. Consequently, no express agreement to arbitrate was ever formed between the parties.[7]

## 2. Was There an Implied Agreement to Arbitrate?

---

[7] By specifying that an attorney "shall be deemed to have agreed to arbitrate" when the client requests it, Bar Rule XIII empowers clients to unilaterally require arbitration, but the rule does not give lawyers the same prerogative. In fact, ACAB Rule 8 (b)(ii) specifically notes that for clients, the arbitration service offered by ACAB "is voluntary. If the client does not agree to arbitrate, the ACAB cannot compel the client to do so." Thus, L&R's two offers to arbitrate did not trigger mandatory arbitration.

BTP maintains, in the alternative, that an agreement was formed by operation of law when it (the client) requested arbitration.

### a. Was This Claim Preserved?

When raising this claim before the trial court, BTP failed to cite D.C. Bar Rule XIII, relying solely on ACAB Rule 8. As we will soon explain, these rules have somewhat different terms. L&R therefore contends that BTP failed to preserve the claim on which it now relies. We disagree. *See Tindle v. United States*, 778 A.2d 1077, 1082 (D.C. 2001) (quoting *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997) ("[A]lthough 'claims' not presented in the trial court will be forfeited . . . , 'parties on appeal are not limited to the precise arguments' they made in the trial court.").

When moving for a stay of litigation pending the completion of arbitration, BTP quoted ACAB Rule 8 (a) ("If the petition is filed by a client, the lawyer is deemed to have agreed to arbitrate . . . ."). It elaborated: "All counsels entering an appearance on behalf of Ludwig are members of the D.C. Bar; therefore, they are all required to proceed to arbitration under the ACAB." BTP thus identified the

principle underlying both rules. There is little risk that L&R, which had earlier proposed arbitration before ACAB, a service provided by the Bar, was misled by BTP's failure to cite Rule XIII.

### b. Was There a Valid Request to Arbitrate?

Both ACAB Rule 8 and Bar Rule XIII give clients the power to require arbitration of fee disputes. However, the rules employ different terms for the triggering event. Under ACAB Rule 8, a "lawyer is deemed to have agreed to arbitrate" when a "petition is filed by a client." Under Bar Rule XIII, an attorney "shall be deemed to have agreed to arbitrate" when "such arbitration is requested by a present or former client."

L&R points out that BTP did not file a petition with ACAB until *after* the trial court had denied arbitration, asserting that BTP did not have a viable claim in the trial court that arbitration was required pursuant to ACAB Rule 8. It also argues that the only way a client may "request" arbitration under Rule XIII is by filing a formal petition with ACAB.[8]

---

[8] In support of this reading, L&R notes Rule XIII's statement that arbitration "shall be pursuant to such reasonable rules and regulations . . . as may be

(continued…)

We conclude that a client need not file a formal petition with ACAB in order to request arbitration pursuant to Bar Rule XIII. A formal filing with ACAB certainly would be sufficient to effectuate such a request, but it is not an absolute prerequisite. Here, BTP's counsel informed the trial court that he actually "tried to" file a petition with ACAB. He also said that ACAB "will not accept the petition until [the] Court stays [the] case."[9] Thus, trying to comply with ACAB's requirements, BTP filed a motion in the trial court to stay litigation and compel arbitration.

---

(…continued)
promulgated from time to time by" the D.C. Bar and ACAB. But Bar Rule XIII specifically provides flexibility in attorney-client arbitration arrangements, stating that "arbitration shall be before" ACAB "[u]nless the attorney and client agree otherwise." Because ACAB is not the exclusive forum for arbitration, its rules do not necessarily limit the ways in which an arbitration agreement can be formed.

[9] ACAB Rule 4 states that "[i]f there is a pending lawsuit in a court about a fee dispute and the client files a petition involving the same fee dispute with the ACAB . . . , the ACAB will not retain jurisdiction nor will it proceed to adjudicate the fee dispute unless the lawsuit is dismissed or stayed." But there may have been some misunderstanding between ACAB personnel and counsel for BTP. In another case, ACAB explained its rule in plain terms, informing litigants that a "fee dispute [may] not continue in two parallel forums." *Louis Fireison & Assocs., P.A. v. Alkire*, 6 A.3d 945, 953 (Md. Ct. Spec. App. 2010).

Even if BTP's efforts to file a petition with ACAB were not enough to constitute a "request" to arbitrate, BTP formally and unequivocally signaled its desire for arbitration by filing a motion to stay litigation and compel arbitration. We hold that a client that files such a motion in court has "requested" arbitration under Bar Rule XIII.[10] Accordingly, L&R "shall be deemed to have agreed to arbitrate" this fee dispute.[11]

## C. Validity of D.C. Bar Rule XIII

L&R challenges the validity of D.C. Bar Rule XIII on two grounds. First, it claims that this court lacked authority to promulgate the rule. Second, L&R challenges the rule's constitutionality. BTP maintains that we should not entertain either of these arguments, since L&R raises them for the first time on appeal. As a

---

[10] Perhaps other types of filings or communications will qualify as a request for arbitration under Bar Rule XIII. We do not decide this question.

[11] L&R argues that even if an arbitration agreement exists, this court should nevertheless affirm on the ground that BTP, through conduct, waived its right to arbitration. We do not consider this argument because our case law clearly states that questions of waiver are "decided by the arbitrator, not the court." *Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458, 465 (D.C. 2010); *see Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 865 (D.C. 2005). We likewise reject L&R's claim that an implied arbitration agreement necessarily fails for lack of mutuality. Because the agreement is formed by operation of law, it need not (and, indeed, cannot) exhibit all the hallmarks of an ordinary contract.

general rule, of course, we do not consider such belated arguments. *See, e.g.*, *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 34 n.3 (D.C. 2001). However,

> an appellate court has discretion, in the interests of justice, to consider an argument that is raised for the first time on appeal if the issue is purely one of law, particularly if the factual record is complete and a remand for further factual development would serve no purpose, the issue has been fully briefed, and no party will be unfairly prejudiced.

Plainly, the validity of Bar Rule XIII is a purely legal issue, and we think "the interests of justice" are best served if we address it here. L&R makes many of the same claims raised in *Stuart v. Walker*, and the merits of that case were never resolved because the court split evenly on the question of jurisdiction. *See supra* note 3. Thus, L&R raises issues "of continuing importance" and "of great public interest" that deserve our consideration. *See Anderson v. Elliott*, 555 A.2d 1042, 1045 (Me. 1989) (exercising discretion to reach and resolve questions about the validity of Maine's mandatory arbitration system for legal fee disputes). We note that "a remand for further factual development would serve no purpose," and that "no party will be unfairly prejudiced" by our decision to reach L&R's final arguments. *Helen Dwight Reid Educ. Found.*, 766 A.2d at 34 n.3.

## 1.  Authority to Promulgate D.C. Bar Rule XIII

L&R contends that this court lacked authority to promulgate Bar Rule XIII. Quite to the contrary, this court possesses broad authority to regulate the practice of law, deriving much of this power from the District of Columbia Court Reorganization Act of 1970.  A portion of that Act, passed by Congress, provides that "[t]he District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion."  D.C. Code § 11-2501 (a) (2012 Repl.).  Beyond this broad statutory grant of authority, the court possesses significant inherent authority as well.  In *Sitcov v. District of Columbia Bar*, we relied upon the "almost universally accepted" proposition "that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction."  885 A.2d 289, 297 (D.C. 2005) (quoting *Brookens v. Comm. on Unauthorized Practice of Law*, 538 A.2d 1120, 1125 (D.C. 1988)).

Notably, the preamble to the rules we promulgated to govern the District of Columbia Bar cites both the inherent and statutory authority of this court.  Taken

together, these two sources of authority allow the court to regulate virtually every aspect of legal practice in the District of Columbia, including the substance of fee agreements. *See* D.C. R. Prof. Cond. 1.5. We readily conclude that this power extends to the subject matter of Bar Rule XIII. *See In re LiVolsi*, 428 A.2d 1268, 1273 (N.J. 1981) (holding that if a court has "authority to control the substance of the [attorney-client] fee relationship, then a power of a lesser magnitude determining the procedure for resolving fee disputes must also be within [the court's] province").

L&R nevertheless asserts that the rule impermissibly alters the jurisdiction of the D.C. courts, since it requires lawyers to arbitrate fee disputes that they would otherwise litigate in civil actions. Additionally, L&R claims that this court violated the Home Rule Act by vesting judicial authority in the non-lawyer members of ACAB panels and by limiting the scope of judicial review. In making these claims, L&R cites several cases from other jurisdictions where courts have considered the type of judicial involvement or the scope of judicial review that must be afforded as part of a mandatory arbitration process.

Importantly, the formation of any arbitration agreement pursuant to Bar Rule XIII requires a manifestation of assent by both attorney and client. Clients

invoke the rule by requesting arbitration. Attorneys submit to the rule by practicing law in the District of Columbia. Provided that Rule XIII is valid, it does not affect the jurisdiction of the D.C. courts or violate the Home Rule Act any more than any other agreement to arbitrate would do.

The rule need not provide for judicial review beyond that which is ordinarily available following arbitration. *See* D.C. Code §§ 16-4423 to -4424 (2012 Repl.); *A1 Team USA Holdings, LLC v. Bingham McCutchen LLP*, 998 A.2d 320, 322 (D.C. 2010) (concluding that under the RUAA, "this court's review of an arbitration award is still extremely limited"); *Schwartz v. Chow*, 867 A.2d 230 (D.C. 2005) (upholding decision of the Superior Court confirming an arbitration award by ACAB). Whatever quasi-judicial authority may be vested in ACAB (if any), it is limited to fee disputes between members of this court's bar and clients who have voluntarily chosen to submit to the board's determination. Nothing in the Home Rule Act inhibits this court's ability to thus manage the affairs of its bar. This court did not exceed its authority in promulgating the rule.

## 2. Constitutionality of D.C. Bar Rule XIII

Separately, L&R challenges D.C. Bar Rule XIII on constitutional grounds, principally claiming that the rule denies lawyers their Seventh Amendment right to a jury trial. The Seventh Amendment's guarantee extends to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized." *Curtis v. Loether*, 415 U.S. 189, 193 (1974). In *Simler v. Conner* the Supreme Court concluded that the underlying "case was in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally 'legal' action." 372 U.S. 221, 223 (1963). The Court therefore held that the Seventh Amendment guaranteed a jury trial. *Id.* Here, L&R's complaint alleges that BTP breached a retainer contract under which it owes attorneys' fees. Thus, L&R has initiated "a traditionally 'legal' action" to which, presumptively, a Seventh Amendment right attaches.[12] Consequently, we must address L&R's contention that Bar Rule XIII violates the Seventh Amendment.[13]

---

[12] This determination is consistent with our holding in *Ginberg v. Tauber*, where an attorney sued his client under a *quantum meruit* theory, seeking the reasonable value of legal services the attorney had provided. 678 A.2d 543, 544-46 (D.C. 1996). There was no retainer agreement, but the client acknowledged that he owed the attorney a reasonable fee. *Id.* at 549. As a result, "the only issue [to be determined] . . . was what was a reasonable fee under the circumstances." *Id.* at 550. The court held "that where it is undisputed that the client owes the attorney some fee for his legal representation, but there is no agreement concerning how the amount will be determined . . . , the trial court, not the jury, determines the amount of fee to be paid." *Id.* at 548. In short, *Ginberg* concluded, "the amount of the fee,

(continued…)

Although other jurisdictions impose rules similar to D.C. Bar Rule XIII, no such rule has ever been struck down for denying an attorney's right to a jury trial. Rather, it has been held that attorneys give up that right by practicing law in a jurisdiction subject to the challenged rule. *See Kelley Drye & Warren v. Murray Indus., Inc.*, 623 F. Supp. 522, 527 (D.N.J. 1985) (holding that "the right to a jury trial can be given up, as parties do when they agree to arbitrate"); *Guralnick v. Supreme Court of N.J.*, 747 F. Supp. 1109, 1116 (D.N.J. 1990) (following *Kelley Drye*). This court has previously cited that analysis in taking care "to cast no doubt upon the validity of D.C. Bar R. XIII." *Ginberg*, 678 A.2d at 551 n.9 (citing *Kelley Drye*).

---

(…continued)
*unless* the amount is fixed by the contract, is . . . for the court to determine." *Id.* at 551 (emphasis added). Here, the parties executed fee agreements, and L&R asserts that its legal fees are, in fact, fixed by contract.

[13] Some state courts have held that their respective state constitutions do not guarantee a jury trial for attorneys litigating fee disputes. *See, e.g.*, *Shimko v. Lobe*, 813 N.E.2d 669, 675, 678-81 (Ohio 2004); *Anderson v. Elliott*, 555 A.2d 1042, 1043, 1049-50 (Me. 1989). These cases do not address the Seventh Amendment question presented here since the "Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts." *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916). However, "like other provisions of the Bill of Rights," the Seventh Amendment is "fully applicable to courts established by Congress in the District of Columbia." *E.R.B. v. J.H.F.*, 496 A.2d 607, 610 n.6 (D.C. 1985) (citing *Pernell v. Southall Realty*, 416 U.S. 363, 370 (1974)).

Federal courts have taken a similar approach in analogous contexts. For example, in *Geldermann v. Commodity Futures Trading Comm'n*, members of a commodities exchange were required by law to submit "to customer-initiated arbitration." 836 F.2d 310, 311 (7th Cir. 1987). A member company challenged the rule—in part on Seventh Amendment grounds—claiming that "membership alone is not sufficient to constitute consent to arbitration and therefore cannot establish a waiver of its constitutional right to an Article III forum." *Id.* at 318. The Seventh Circuit disagreed, explaining that consent to observe all applicable rules and regulations was "a precondition of membership" in the exchange. *Id.* Accordingly, the court held that the company was "not entitled to an Article III forum" and that "the Seventh Amendment [was] not implicated." *Id.* at 324. *See also Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 402 (3d Cir. 1987) (holding that a member of the National Association of Securities Dealers was "bound by its rules . . . under which a customer may compel arbitration") (abrogation on other grounds recognized by *Delgrosso v. Spang & Co.*, 903 F.2d 234, 236 n.2 (3d Cir. 1990)); *Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank*, 728 F.2d 577, 580 (2d Cir. 1984) (holding that the rules of a stock exchange were "sufficient in and of themselves" to compel a member to

submit to arbitration requested by a non-member "whether or not [the rules] are incorporated in a purchase and sale agreement").

Because an arbitration agreement necessarily embodies a waiver of the right to trial by jury, a determination that there is a valid arbitration agreement here would foreclose any claim L&R might have had to a jury trial. *See GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 244 (2d Cir. 2001) (characterizing the factual premise of a Seventh Amendment claim as "purely hypothetical" where one party to a dispute had exercised its statutory right to compel arbitration); *Geldermann*, 836 F.2d at 323 (holding that where the parties have consented to arbitration, "the Seventh Amendment simply does not apply"); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460, 1471 (N.D. Ill. 1997) (when "claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes"). A case-specific waiver of the right to a jury trial is not necessary.

Still, L&R contends that it cannot be deemed to have agreed to arbitrate because at least some of its attorneys joined the District of Columbia Bar before this court promulgated Bar Rule XIII in 1995. Lawyers are required to renew their bar membership every year, however, and those who have done so since 1995 cannot now claim immunity from the rule. In any event, the legal work at issue

here took place in 2011 and 2012, long after Rule XIII was promulgated. The attorneys' practice of law in this jurisdiction is enough to make them subject to Rule XIII with respect to any fee dispute arising from that practice.[14]

We now turn to whether this court, through Bar Rule XIII, may require such client-initiated arbitration without violating the Constitution. L&R obliquely suggests that the rule places an unconstitutional condition on the privilege of practicing law in the District of Columbia. Again, however, L&R fails to cite a case—and we are not aware of any—where a litigant has prevailed on that theory when challenging a mandatory arbitration system for attorney-client fee disputes. Courts that have considered the issue have held that "[n]o one has an absolute right to practice law," *Kelley Drye*, 623 F. Supp. at 527, and "[t]he State may impose reasonable conditions and limitations upon those who wish to exercise th[at]

---

[14] Moreover, BTP and L&R signed retainer agreements in 2011 and 2012. "[L]aws in effect at the time of the making of a contract form a part of the contract 'as fully as if they had been expressly referred to or incorporated in its terms.'" *Double H Hous. Corp. v. Big Wash, Inc.*, 799 A.2d 1195, 1199 (D.C. 2002) (quoting *Farmers & Merchs. Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923)). Applying this principle of law in a case similar to this, the Maryland Court of Special Appeals held that D.C. Bar Rule XIII had been implicitly incorporated into a retainer contract and that the attorney who executed it had "agreed to arbitrate a fee dispute with [his client] upon her request." *Fireison*, 6 A.3d at 953-54.

privilege." *Anderson*, 555 A.2d at 1050 (Me. 1989) (quoting *Kelley Drye*, 623 F. Supp. at 527).

"The interest of the States in regulating lawyers is especially great," and they "have broad power to establish standards for . . . regulating the practice of professions." *Goldfarb v Virginia State Bar*, 421 U.S. 773, 792 (1975). This includes the right to establish and enforce rules governing the reasonableness of attorney fees. *See* D.C. R. Prof. Cond. 1.5. When promulgating Bar Rule XIII, this court sought to provide an informal and efficient means of resolving attorney-client fee disputes, which are one of the principal sources of public dissatisfaction with the legal system. *See Anderson*, 555 A.2d at 1049. Because clients are at a significant disadvantage in litigating those disputes, the rule protects their ability to present meritorious claims and defenses, and, we believe, thereby fosters public confidence in the bar. *See id.*; *see also In re LiVolsi*, 428 A.2d at 1272, 1280. Thus, regulation "in the area of fee disputes" is "critically important." *Nodvin v. State Bar of Ga.*, 544 S.E.2d 142, 145 (Ga. 2001) (quoting *In re LiVolsi*, 428 A.2d at 1272).

The scope of Bar Rule XIII is well-fitted to its ends. The rule does not, for instance, require lawyers to give up their right to a jury trial in civil cases not

involving fee disputes, and arbitration of fee disputes is required only if the client requests it. Moreover, the arbitration system itself provides an impartial tribunal and the other elements of due process. These considerations support our conclusion that requiring lawyers to submit to client-initiated arbitration "is an entirely reasonable exercise of the judicial power to superintend the bar." *Anderson*, 555 A.2d at 1049.[15]

In addition to its Seventh Amendment claim, L&R maintains that compulsory arbitration denies lawyers their right to due process. Similar claims have unvaryingly failed in the courts that have heard them. *See Guralnick*, 747 F. Supp. at 1113-14; *A. Fred Miller, Attorneys at Law, P.C. v. Purvis*, 921 P.2d 610, 617-18 (Alaska 1996); *Nodvin*, 544 S.E.2d at 145-46. We see no reason to part ways with this consistent body of persuasive precedent. "[D]ue process is not necessarily judicial process. . . . [N]either is the right of appeal essential to due

---

[15] On this score as well, our conclusion is consistent with analogous federal case law. In *Geldermann*—described above—the law compelling arbitration for members of the commodities exchange was upheld despite the claim that if a member company "was to continue in business, [it] had no choice but to accept the" rule. 836 F.2d at 317. *See also Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 366, 368 (7th Cir. 1999) (holding that it was not unconstitutional for an employer to require an arbitration agreement as a "take-it-or-leave-it" condition of employment, in part because "[t]he right to an Article III forum is waivable").

process of law." *Guralnick*, 747 F. Supp. at 1113 (quoting *Reetz v. Michigan*, 188 U.S. 505, 507-08 (1903)). Rather, "[t]he crux of due process is an opportunity to be heard and the right to adequately represent one's interests." *A. Fred Miller, Attorneys at Law, P.C.*, 921 P.2d at 617-18. Arbitration procedures under ACAB rules "readily satisfy these minima." *Id.*[16]

### III.  Conclusion

There was a valid agreement to arbitrate pursuant to D.C. Bar Rule XIII and the trial court should have enforced it. Accordingly, we vacate the trial court's order denying BTP's motion to stay, and remand the case with instructions to enforce the arbitration agreement.

*It is so ordered.*

---

[16] L&R also raises an argument that it has styled as an equal protection claim. The firm asserts that Bar Rule XIII is "vastly overinclusive" because "it routes to arbitration oft-times complex matters." L&R does not explain how the complexity of some attorney-client fee disputes works any deprivation of equal protection under the law. In our view, the suggestion that this fee dispute is too complex for ACAB is simply another facet of L&R's due process claim, which we have already rejected.