# District of Columbia
# Court of Appeals

**No. 14-CV-1443**

PAMELA B. STUART,

Appellant,



FILED
JUL 28 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CAB-7923-08

BARBARA J. WALKER,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: FISHER and BLACKBURNE-RIGSBY, *Associate Judges*; and PRYOR, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order denying appellant's motion to vacate the arbitration award is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: July 28, 2016.

Opinion by Associate Judge Anna Blackburne-Rigsby.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-1443

PAMELA B. STUART, APPELLANT,

FILED 7/28/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

BARBARA J. WALKER, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-7923-08)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued February 2, 2016                    Decided July 28, 2016)

*Pamela B. Stuart*, pro se.

*Barbara J. Walker*, pro se.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and PRYOR, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*: *Pro se* appellant Pamela B. Stuart, a member of the District of Columbia Bar, appeals the trial court's granting of a

motion to compel arbitration, pursuant to D.C. Bar R. XIII,[1] to resolve a fee dispute with her former client, *pro se* appellee Barbara J. Walker.[2] Ms. Stuart contends that this court lacked the authority to promulgate Rule XIII under the District of Columbia Court Reform and Criminal Procedure Act of 1970 ("Court Reform Act"), D.C. Code § 11-2501 (a) (2012 Repl.), the Home Rule Act, D.C. Code § 1-206.02 (a)(4) (2012 Repl.), and the United States Constitution. We have already upheld Rule XIII as valid and constitutional in *BiotechPharma v. Ludwig & Robinson, PLLC*, 98 A.3d 986 (D.C. 2014).[3] In this post-arbitration appeal, Ms. Stuart challenges Rule XIII, and she raises essentially the same arguments, save two, that this court addressed in *BiotechPharma*. After a brief review of the arguments raised and this court's holding in *BiotechPharma*, we address the two new challenges Ms. Stuart raises. For the reasons discussed below, we reject Ms. Stuart's arguments and affirm.

---

[1] D.C. Bar R. XIII ("Rule XIII") states that "[a]n attorney subject to the disciplinary jurisdiction of [the District of Columbia Court of Appeals] shall be deemed to have agreed to arbitrate disputes over fees for legal services . . . when such arbitration is requested by a present or former client . . . ."

[2] Ms. Walker is a former member of the District of Columbia Bar, who currently practices law in Virginia.

[3] *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (stating that "no division . . . will overrule a prior decision of this court . . . and that such result can only be accomplished by this court *en banc*").

# I. Factual Background

Ms. Stuart represented Ms. Walker in a lawsuit against her former employer, and entered into an oral fee agreement, which did not specifically discuss arbitration of fee disputes. Ms. Walker contested the amount of fees billed and refused to pay, prompting Ms. Stuart to file a civil claim for fraud and breach of contract against Ms. Walker for unpaid legal fees and expenses (including accrued interest) in the amount of $127,928.30. In response, Ms. Walker filed a request to arbitrate the dispute with the District of Columbia Bar's Attorney-Client Arbitration Board, pursuant to Rule XIII. Ms. Stuart objected to arbitration, but the trial court issued an order compelling the parties to arbitrate.[4]

The arbitration panel rendered a decision ordering Ms. Walker to pay Ms. Stuart $6,860 within 90 days and requiring each party to bear her own costs for the arbitration. Ms. Stuart filed a motion to vacate the award and set the matter for

---

[4] Ms. Stuart first challenged Rule XIII in an interlocutory appeal of the order compelling arbitration. *Stuart v. Walker*, 6 A.3d 1215 (D.C. 2010), *vacated*, 30 A.3d 783 (D.C. 2011) (en banc). The *en banc* court heard the case but remained divided on the question of jurisdiction of the interlocutory order and did not reach the merits of the case. Subsequently, this court issued a judgment stating that "the trial court's order directing the parties to proceed with arbitration remains in full force and effect." *See Stuart v. Walker,* No. 09-CV-900 (D.C. Feb. 16, 2012) (en banc) (unpublished judgment).

trial, arguing that Rule XIII is invalid and unconstitutional and that the $6,860 award was arbitrary and capricious. The trial court held a hearing and denied Ms. Stuart's motion to vacate the award based on this court's recent decision in *BiotechPharma*, which affirmed the validity of Rule XIII under the Court Reform Act, the Home Rule Act, and the United States Constitution. The trial court also found that Ms. Stuart's contention that the award was arbitrary and capricious was not a cognizable basis for review. *See* D.C. Code § 16-4423 (a) (2012 Repl.) (listing the available grounds for reviewing an arbitration award). This appeal followed.

## II. Discussion

### A. *BiotechPharma* Holding

*BiotechPharma* squarely addresses the majority of Ms. Stuart's arguments concerning Rule XIII. In *BiotechPharma*, the appellant argued that: 1) this court lacked the express authority from Congress to promulgate Rule XIII; 2) Rule XIII violates the Home Rule Act[5] by removing attorney-client fee disputes from the

---

[5] The Home Rule Act prohibits the Council of the District of Columbia from enacting "any act, resolution, or rule with respect to any provision of Title 11

( . . . continued)

jurisdiction of the District of Columbia courts, by vesting judicial authority in non-lawyer members of arbitration panels, and by limiting the scope of judicial review of arbitration awards; and 3) Rule XIII violates attorneys' Seventh Amendment right to a jury trial and their Fifth Amendment right to due process. *BiotechPharma, supra*, 98 A.3d at 994-95, 998.  The court rejected those arguments.

*BiotechPharma* held that the Court Reform Act gives this court the statutory authority to "make such rules as it deems proper" concerning the affairs of the District of Columbia Bar.  D.C. Code § 11-2501 (a) (2012 Repl.).  The *BiotechPharma* court further held that as "the highest court [of] the jurisdiction," this court possesses "the inherent authority to define, regulate, and control the practice of law in th[is] jurisdiction."  *BiotechPharma, supra*, 98 A.3d at 994 (quoting *Sitcov v. District of Columbia Bar*, 885 A.2d 289, 295, 297 (D.C. 2005)).  Together, "both the inherent and statutory authority" allow this court to "regulate virtually every aspect of legal practice in the District of Columbia, including the substance of fee agreements," which is the subject matter of Rule XIII.  *Id.*

---

(continued . . .)
of the District of Columbia [Official] Code (relating to organization and jurisdiction of the District of Columbia courts)."  D.C. Code § 1-206.02 (a)(4) (2012 Repl.).

*BiotechPharma* also held that Rule XIII does not run afoul of the Home Rule Act, which prohibits the Council for the District of Columbia from altering the D.C. courts' jurisdiction, because mandatory arbitration under the rule does not modify the courts' jurisdiction, but instead creates an implied agreement between attorneys and their clients. *Id.* at 994. Specifically, mutual assent to the arbitration agreement occurs when "[a]ttorneys submit to the rule by practicing law in the District of Columbia," and "[c]lients invoke the rule by requesting arbitration." *Id.* at 994. Accordingly, any quasi-judicial authority vested in the Attorney-Client Arbitration Board "is limited to fee disputes between" attorneys and their clients "who have voluntarily chosen to submit to the board's determination."[6] *Id.* at 995. Thus, Rule XIII does not violate the Home Rule Act because it does not alter this court's jurisdiction "any more than any other agreement to arbitrate would." *Id.*

---

[6] Like Ms. Stuart, appellants in *BiotechPharma* also argued that attorneys admitted to the District of Columbia Bar prior to the promulgation of Rule XIII in 1995 did not consent to the rule. In *BiotechPharma*, this court stated, however, that "[l]awyers are required to renew their bar membership every year . . . and those who have done so since 1995 cannot now claim immunity from the rule." *BiotechPharma, supra*, 98 A.3d at 996. Additionally, the legal work in *BiotechPharma* and Ms. Stuart's case took place "long after Rule XIII was promulgated" and thus "[t]he attorneys' practice of law in this jurisdiction is enough to make them subject to Rule XIII with respect to any fee dispute arising from that practice." *Id.*

Finally, *BiotechPharma* held that Rule XIII does not violate the Seventh Amendment right to a jury trial or the right to due process. Attorneys are deemed to waive their Seventh Amendment right to a jury trial for fee disputes under Rule XIII "[b]ecause an arbitration agreement necessarily embodies a waiver" of that right. *Id*. at 996-97 (citing *Kelley Drye & Warren v. Murray Indus.*, 623 F. Supp. 522, 527 (D.N.J. 1985) and *Geldermann, Inc. v. Commodity Futures Trading Comm'n*, 836 F.2d 310, 318 (7th Cir. 1987) to conclude that Rule XIII and similar rules do not violate an attorney's Seventh Amendment right to a jury trial). Essentially, "[n]o one has an absolute right to practice law," *see Kelley Drye & Warren, supra*, 623 F. Supp. at 527, and it is a significant government interest to regulate the practice of law including fee disputes with clients, to which end Rule XIII is narrowly tailored, *see BiotechPharma, supra*, 98 A.3d at 997.

Regarding the right to due process, the court stated that "due process is not necessarily judicial process," but rather "the crux of due process is an opportunity to be heard and the right to adequately represent one's interests." *Id*. at 998 (internal citations and edits omitted). Rule XIII satisfies these due process requirements by providing both an opportunity for attorneys to be heard and an avenue to adequately represent their interest before the Attorney-Client Arbitration Board. *See id.*

We adhere to the holding and rationale articulated by this court in *BiotechPharma*, and we reject the above arguments, which Ms. Stuart repeats in this appeal. However, Ms. Stuart makes the following two additional arguments that were not raised by the parties in the *BiotechPharma* case: 1) the Court Reform Act indicates that Congress chose to expressly authorize the District of Columbia courts to permit voluntary, but not mandatory arbitration, and this court therefore has no inherent authority to promulgate a rule mandating arbitration, and 2) Rule XIII violates her constitutional right of "access to the courts."

**B.     Whether the Court Reform Act Prohibits Mandatory Arbitration**

Ms. Stuart first argues that *BiotechPharma* incorrectly held that this court has inherent authority to promulgate Rule XIII. She contends that Congress created the District of Columbia Court of Appeals through the Court Reform Act, *see* D.C. Code §§ 11-101, -102 (2012 Repl.), pursuant to its authority under Article I, Section 8, Clause 17 of the United States Constitution. Accordingly, she argues, this court's powers derive only from Congress's express delegation of authority, leaving no room for "inherent or implied" authority. Ms. Stuart also contends that Congress, in the Court Reform Act, specifically authorized voluntary arbitration, but did not authorize this court to mandate arbitration. *See* D.C. Code

§ 11-1322 (2012 Repl.) (permitting the Small Claims and Conciliation Branch to settle cases by arbitration "with the consent of the parties thereto"). Therefore, Ms. Stuart contends that because Congress had the opportunity to expressly authorize this court to compel arbitration but chose not to do so, promulgating Rule XIII exceeds this court's authority granted via the Court Reform Act.

We are unpersuaded by this argument. It is well established that this court has statutory and inherent authority to regulate all aspects of the District of Columbia Bar. *See Sitcov, supra*, 885 A.2d at 295, 297. Ms. Stuart attempts to challenge this court's inherent authority to regulate the Bar by highlighting D.C. Code § 11-1322 of the Court Reform Act — a section that discusses arbitration, but is unrelated to the subject of managing the District of Columbia Bar. However, what is more relevant to this court's power to promulgate Rule XIII, is the language in the Court Reform Act that gives this court the express authority to "*make such rules as it deems proper* respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion." D.C. Code § 11-2501 (a) (2012 Repl.) (emphasis added); *see also* D.C. Code § 11-2502 (2012 Repl.).

The reasonableness of an attorney's fee is a disciplinary matter subject to censure, suspension, and expulsion, and thus a matter to be regulated by this court. *See, e.g.*, *In re Martin*, 67 A.3d 1032, 1035 (D.C. 2013) (issuing an eighteen-month suspension for, *inter alia*, charging a grossly unreasonable fee); *see also* D.C. R. Prof. Cond. 1.5 (a) ("A lawyer's fee shall be reasonable"). It follows that the method of disputing attorney's fees is also subject to regulation by this court given that a dispute over attorney's fees may lead to censure, suspension, or expulsion should an attorney's fee be deemed unreasonable. *See BiotechPharma, supra*, 98 A.3d at 994; *see also In re LiVolsi*, 428 A.2d 1268, 1273 (N.J. 1981) ("[I]f, in short, this Court has the authority to control the substance of the fee relationship, then a power of a lesser magnitude determining the procedure for resolving fee disputes must also be within our province.").

Moreover, "clients are at a significant disadvantage in litigating" attorney-client fee disputes, and Rule XIII "protects their ability to present meritorious claims and defenses, and . . . thereby fosters public confidence in the bar." *BiotechPharma, supra*, 98 A.3d at 997. Accordingly, the language "make such rules as it deems proper" in the Court Reform Act establishes the inherent authority to regulate attorney-client fee agreements, and this court created Rule XIII because

it deemed it proper to mandate arbitration in order to ensure a fair process for resolving disputes over attorney's fees.

### C.   Constitutionality of Rule XIII

Second, Ms. Stuart raises a constitutional challenge to Rule XIII that was not specifically addressed in *BiotechPharma*.  She argues that Rule XIII violates her First Amendment right of "access to the courts," preventing her from accessing "a judge, discovery procedures, the rules of evidence and civil procedure, and a public trial" for fee disputes.  *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.").  Upon admission to the bar of the District of Columbia, attorneys submit to Rule XIII and are deemed to agree to the arbitration of fee disputes against clients once a client requests arbitration.[7] *BiotechPharma, supra*, 98 A.3d at 994, 996.  The critical purpose of Rule XIII is to

---

[7]   Ms. Stuart argues that this formation of an agreement amounts to "an unconscionable contract of adhesion" because there is "a disparity in bargaining power" where the District of Columbia Courts force an attorney, who is "dependent upon her license to practice law for her livelihood," to enter into an arbitration agreement under Rule XIII.  However, the more pressing concern, in this court's view and in other jurisdictions, is the "disparity in bargaining power in attorney fee matters" between an attorney and her client "which favors the attorney in dealings with infrequent consumers of legal services."  *Aguilar v. Lerner*, 88 P.3d 24, 28 (Cal. 2004).  Rule XIII properly addresses that concern.

ensure that clients who have concerns about their attorney's fees and who are inexperienced with litigation can arbitrate the fee dispute and avoid opposing their attorneys in court. We therefore hold that by submitting to the Rules Governing the District of Columbia Bar, attorneys are deemed to have waived their First Amendment right of "access to the courts" when a client requests arbitration.

More specifically, Ms. Stuart argues that by preventing lawyers from accessing the judicial system for fee disputes, Rule XIII denies them the First Amendment right of "access to the courts" and equal protection under the Constitution. However, lawyers are not a protected class under the Constitution, and as we stated in *BiotechPharma*, it is a privilege, not a right, to practice law and that privilege must be regulated for the protection of clients. *Id.* at 997. This critical goal would be defeated if arbitration of fee disputes was voluntary for attorneys, as Ms. Stuart argues it should be. Our holding, with respect to Ms. Stuart's First Amendment equal access to the courts argument, is consistent with the court's holding in *BiotechPharma* that Rule XIII does not violate an attorney's Seventh Amendment right to a jury trial for fee disputes with clients. *Id.* at 995.

### D. The Arbitration Award

Separate from her Rule XIII challenges, Ms. Stuart claims that the trial court erred when it refused to vacate the arbitration award and set the matter for trial. She offers little support for this argument except her broad assertion that the arbitrators failed to consider the evidence she presented, and her contention that the resulting award was "bizzare."[8]  On this basis, she suggests that the arbitration award should have been calculated by applying the Lodestar method, which is "the number of hours reasonably expended on a task multiplied by a reasonable hourly rate." *Tenants of 710 Jefferson St., N.W. v. District of Columbia Rental Hous. Comm'n*, 123 A.3d 170, 180 (D.C. 2015).  The reasonable hourly rate used, she contends, should have been derived from the Laffey matrix, which is "a fee schedule of hourly rates for attorneys practicing in the District of Columbia, broken down by years of experience." *Id*. at 182.

---

[8]  During the hearing before the trial court, Ms. Stuart argued that the award was arbitrary and capricious.  The trial court correctly held that "[a]n assertion of arbitrariness and capriciousness that rests upon errors of law or fact is . . . insufficient to support review." *See* D.C. Code § 16-4423 (a) (2012 Repl.) (listing the available grounds for reviewing an arbitration award).  She also argued that the award was made "in manifest disregard of the law" because the award was insubstantial compared to the amount of hours she dedicated to the case.  The trial court held that there was "no indication" that the arbitrators disregarded applicable law.  We agree, and Ms. Stuart offers little support for her argument to the contrary.

"It is firmly established that judicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden." *Schwartz v. Chow*, 867 A.2d 230, 233 (D.C. 2005) (quotations, citations, and edits omitted). Arbitrators are not required to state the grounds for their decision, *id.*, and a party may not seek review of an award solely because she received an unfavorable result, *Shore v. Groom Law Grp.*, 877 A.2d 86, 91 (D.C. 2005). Instead, the Revised Uniform Arbitration Act (RUAA), D.C. Code § 16-4423 (a), lists the statutory grounds for reviewing an arbitration award, none of which apply here, and Ms. Stuart provides no evidence to support their applicability.[9]

---

[9] D.C. Code § 16-4423 (a) states:

> Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: (1) The award was procured by corruption, fraud, or other undue means; (2) There was: (A) Evident partiality by an arbitrator appointed as a neutral arbitrator; (B) Corruption by an arbitrator; or (C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding; (3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to § 16-4415, so as to prejudice substantially the rights of a party to the arbitration proceeding; (4) An arbitrator exceeded the arbitrator's powers; (5) There was no agreement to arbitrate; or (6) The arbitration was conducted without proper notice of the initiation of an arbitration as required

( . . . continued)

Ms. Stuart contends that, despite the RUAA, this court "probably" has the authority to conduct more intensive review of the arbitration award because "it has jurisdiction over the D.C. Bar . . . and the decisions of any of its instrumentalities such as [the Attorney-Client Arbitration Board]," and "there is no authority for imposing the circumscribed appellate authority of the" RUAA on the outcome of a case from the Attorney-Client Arbitration Board. However, the RUAA does not specify that it only governs certain types of arbitration proceedings, so we consider it to govern cases from the Attorney-Client Arbitration Board. *See* D.C. Code § 16-4403.

## III.    Conclusion

Accordingly, the order denying Ms. Stuart's motion to vacate the arbitration award is affirmed.

*So ordered.*

_____

(continued . . .)
>         in § 16-4409 so as to prejudice substantially the rights of
>         a party to the arbitration proceeding.